[No. 37734-9-II.   Division Two.   January 5, 2010.]

*In the Matter of the Settlement/Guardianship of* A.G.M. ET AL.[†]

---

[†] It is appropriate to provide some confidentiality in this case. Accordingly, it is hereby ordered that initials will be used in the case caption and in the body of the opinion to identify the parties and other juveniles involved.

*Yulia Khorun* (of *Rubinstein Law Offices*), for appellant.
*Stephen W. Fisher*, for respondent.

¶1 Hunt, J. — Rubinstein Law Offices appeals the superior court's order reducing attorney fees for settling its minor client's, AGM, personal injury claim. Rubinstein argues that (1) under the contingent fee agreement, it was entitled to $33,333.33 (one-third of the gross settlement amount)[1] and (2) the superior court erred by using the lodestar method and awarding only $15,000.00 in attorney fees. Finding no abuse of discretion, we hold that the superior court's attorney fee award was reasonable and affirm. We also grant attorney fees and costs on appeal to the settlement guardian ad litem (SGAL). Holding that this appeal is frivolous, we order Rubinstein to pay the SGAL's attorney fees and costs on appeal. RAP 18.9(a).

## FACTS

### I. Background

¶2 In March 2006, a vehicle drove through a red light and struck the car in which minor sisters, 3-year-old AGM and 11-month-old LMM, were riding with their parents and another adult. Police cited the at fault driver for negligent driving.

¶3 AGM, sitting "double belted" on her mother's lap, suffered severe injuries that required hospitalization in the pediatric intensive care unit. Clerk's Papers (CP) at 34. Following her release from the hospital, she had several follow-up visits. Since that time, she has occasionally exhibited minor symptoms, such as loss of hair and stomachaches, arising from the injuries sustained during the accident. The billed costs for AGM's medical care exceeded $68,000.[2]

---

[1] This contingent fee agreement also contained a provision allowing the clients to petition the court to determine whether the fee was reasonable.

[2] In her declaration, Rubinstein attorney Yulia Khorun stated that her office negotiated with ACS Recovery Services to discount the costs for AGM's care to $16,854.52. The superior court noted a subrogation lien against AGM's settlement proceeds for this amount.

¶4 LMM, in a child car seat, suffered a small cut in her eyelid. Examined and released from the hospital the same day, she required no follow-up care. The billed costs for LMM's care totaled $3,135.[3]

¶5 AGM and LMM's parents hired Rubinstein Law Offices to represent all of the vehicle's occupants, including AGM and LMM. On AGM and LMM's behalf, the parents signed a contingent fee agreement promising to pay Rubinstein one third of the gross settlement amount, subject to the clients' ability to petition the court for a hearing to determine whether the fee was reasonable. In October, Rubinstein submitted to the at-fault driver's insurance company, State Farm Automobile Insurance Company, a three-page demand letter for the claims of all five plaintiffs, only seven lines of which addressed AGM's injuries and claim.

## II. Procedure

### A. Settlement and SGAL

¶6 On November 15, 2006,[4] State Farm offered to settle AGM's claim for $100,000, the at-fault driver's policy limit.[5] This settlement offer was accepted, apparently by Rubinstein the same day, pending the superior court's approval. State Farm later offered to settle LMM's claim for $4,500.

¶7 On November 30, State Farm petitioned the superior court for appointment of an SGAL "to investigate the reasonableness and adequacy of [State Farm's] offer" to AGM, as

---

[3] In her declaration, Khorun stated that her office negotiated with ACS Recovery Services to discount the costs for LMM's care. The superior court similarly noted a subrogation lien against LMM's settlement proceeds for the reduced amount of $676.25.

[4] The SGAL's report recites November 15 as the date State Farm made the settlement offer. Khorun, however, represented to the superior court that State Farm made the offer on December 15. It appears that November 15 is the correct date based on State Farm attorney Darren Grafe's November 30 petition for appointment of an SGAL.

[5] State Farm did not contest liability.

Superior Court Special Proceedings Rule (SPR) 98.16W required. CP at 1. State Farm later amended its petition to ask that the SGAL represent both minors. The superior court appointed attorney Danny Lazares as SGAL and ordered him to investigate and to prepare a written report addressing, among other things, the reasonableness of the proposed settlements and Rubinstein's requested fees and costs for representing AGM and LMM.

¶8 The SGAL investigated, reported to the superior court, opined that both settlement offers were reasonable, and recommended that the superior court approve them. Also opining that Rubinstein's requested attorney fees for LMM were reasonable, the SGAL recommended that the superior court approve them because, unlike AGM's policy limit offer, Rubinstein had negotiated with State Farm to reach an acceptable settlement offer for LMM. The SGAL further noted that Rubinstein had done more work on LMM's claim than on AGM's claim, for which Rubinstein was requesting significantly higher attorney fees.[6]

¶9 In contrast, the SGAL opined that a lesser attorney fee award would be "fair compensation" for Rubinstein's representation of AGM. CP at 40. The SGAL reasoned that if the superior court did not reduce Rubinstein's fees, (1) the net amount AGM would receive after paying Rubinstein would be insufficient to compensate her for her injuries; and (2) approving his requested attorney fees, one third of all gross sums recovered under the parties' contingent fee agreement, "would represent a significant windfall to [Rubinstein]." CP at 39.

¶10 In support of his recommendation to reduce Rubinstein's fees, the SGAL explained:

> I was told by the adjuster that the bulk of Mr. Rubinstein's time was spent on the claims of the adults, and that the children's claims, especially [AGM's], were settled quite quickly.

---

[6] Khorun's declaration stated that the attorney fees were $1,500.00 for LMM and $33,333.33 for AGM (each amount equaling one third of the total settlement for each child).

Based upon my investigation and examination of the work done by the minor's attorney and staff concerning the claim of this child, it is my estimate that no more than a few hours of attorney time and a few more hours of staff time were involved in this claim to date. I am convinced that the offer of policy limits was made by the adjuster once she confirmed the hospital discharge assessment and the amount of medical specials.

Taking into consideration the desire to see to it that the minor is fully compensated, while also considering the novelty of the claim or lack thereof, as well as the time devoted to settlement of the claim, it is my opinion that attorney fees for Mr. Rubenstein [sic] of between $10,000.00 and $12,000.00 would represent fair compensation.

CP at 40. The SGAL further noted that his own fees were "higher than [he] would normally have anticipated" because it was difficult to obtain the necessary documents from Rubinstein in a timely manner. CP at 45.

## B. Initial Settlement Approval Hearing

¶11 Rubinstein attorney Yulia Khorun submitted to the superior court, but not to the SGAL or to State Farm, a sworn declaration explaining the services that Rubinstein and she had provided to AGM, LMM, and the adults injured in the accident. Khorun declared that Rubinstein had (1) "monitored [AGM's and LMM's] treatment," (2) reviewed medical records, (3) negotiated with State Farm, and (4) negotiated discounts for the medical services AGM and LMM received. CP at 57-58. Khorun also declared, "[M]y office and I filed the Petition to appoint the SGAL, [and] prepared and sent documentation requested by the SGAL." CP at 57. But it was State Farm, not Rubinstein, who filed the petition to appoint the SGAL.

¶12 The settlement approval hearing was initially set for 9:00 AM on March 28, 2008. When the court began the hearing, no Rubinstein attorney was present to represent AGM and LMM. Khorun called the court to request permis-

sion to appear by telephone "because she was unable to leave her home [in Issaquah] due to snow." Report of Proceedings (RP) (Mar. 28, 2008) at 5, 9. But when the superior court's judicial assistant called Rubinstein Law Offices in Bellevue to have the office relay a message to Khorun at her home, the judicial assistant discovered that Khorun was in the office, where there was no snow. The superior court then reset the hearing for 1:30 PM that afternoon and ordered Khorun to appear in person with her clients.

¶13 At the rescheduled afternoon hearing, Khorun explained how difficult the case was because of the number of clients involved. Khorun also explained that "there was no need to negotiate [AGM's claim] any further" after receiving State Farm's policy limits offer on December 15.[7] RP (Mar. 28, 2008) at 23. Khorun said that, for a variety of reasons, she had been unable to obtain the medical records the SGAL had requested.

¶14 The SGAL informed the superior court of his concerns about Rubinstein's work for AGM because Rubinstein had not provided him information that he, the SGAL, an experienced personal injury attorney, believed was necessary to submit a case for settlement. For example, when the court initially appointed the SGAL in May 2007, Rubinstein did not provide the SGAL with a complete set of medical records from the accident or any information concerning medical liens, subrogated interests, or what amounts "had to be paid back." RP (Mar. 28, 2008) at 28. It was not until February 2008, nine months later, that the SGAL received this information from Rubinstein.

¶15 The SGAL also informed the court that (1) he had never met or spoken with the Rubinstein attorney assigned to AGM and LMM's case, (2) all his communications had been with Rubinstein's nonattorney staff, and (3) trying to work with Rubinstein had been "frustrating." RP (Mar. 28,

---

[7] Again, it appears that State Farm actually made its offer on November 15, not December 15.

2008) at 30. The SGAL further explained that his fee was higher than normal due in part to the significant time lapse between when he requested the medical records from Rubinstein and when he actually received them. The SGAL asserted that, but for Rubinstein's delay in providing requested records, the settlement monies would already have been deposited and would already have earned 9 or 10 months' interest.

¶16 The superior court then questioned Khorun about several items in her declaration. When the court asked how Rubinstein had monitored LMM's treatment (because LMM had received no follow-up treatment after her brief visit to the hospital), Khorun replied that she had questioned the parents to make sure LMM had not had follow-up treatment. Khorun also admitted that "in this particular case, probably [Rubinstein] did not monitor those records for the child's treatment as [closely as for] the parents' treatment." RP (Mar. 28, 2008) at 44. The superior court then clarified that Khorun's misidentification of her clients and the payor insurance company were scrivener's errors in her declaration. Further, in response to another question by the court, Khorun admitted that Rubinstein's office had not prepared the petition to appoint the SGAL, contrary to her assertion in her sworn declaration.

¶17 At the end of the hearing, the superior court found that the settlement amounts for both minors were reasonable and approved them. But the superior court reserved ruling on the reasonableness of Rubinstein's attorney fee requests because Rubinstein had failed to provide sufficient information for the court either to approve the request or to reduce the requested fees according to the SGAL's recommendation. The court ordered Khorun to provide the following additional information: (1) Rubinstein's representation and fee agreement, (2) a breakdown of the number of hours Rubinstein attorneys and staff had spent on each minor's claim, (3) descriptions of the type of work performed, and (4) identification of who had performed the work. The court informed State Farm and the SGAL that they could respond

in writing to Rubinstein's attorney fee request and to the additional information the court requested from Khorun.

## C. Rubinstein's Additional Documentation

¶18 After this first hearing, Rubinstein submitted a petition for an order approving attorney fees. Rubinstein attached to the petition (1) the contingent fee agreement, which the minors' parents had signed; (2) an itemized attorney fee lien for LMM's claim; (3) an itemized attorney lien for AGM's claim; (4) several maps, gas price calculations, and directions downloaded from the Internet to support Rubinstein's request for travel expenses; (5) medical records from a physician who had provided follow-up treatment to AGM after her release from the hospital; and (6) another Khorun declaration.

¶19 In the itemized attorney fee lien for AGM's claim, Rubinstein represented that (1) one attorney had spent two and one-half hours of telephone time, at an hourly rate of $250.00, for a total of $625.00; (2) the firm's paralegal had spent 56 hours, at an hourly rate of $120.00, for a total of $6,720.00; and (3) costs for records, interpreter fees, postage, and photocopies totaled $583.78. The lien also included a $1,401.88 "lien for GAL services," $27.34 in "[t]ravel expenses for GAL services," and a $156.25 "lien for future GAL expenses."[8] CP at 80. The total amount of Rubinstein's itemized lien for AGM's claim was $9,464.25.

¶20 In response, the SGAL filed a declaration in which he expressed concern that Rubinstein's petition (1) referred to services not related to the minor; (2) did not indicate which services, or what portions of a service, were related to each minor's claim; and (3) claimed to have spent approximately 24 hours assisting the SGAL in preparing his SGAL

---

[8] These amounts appear to be approximately one-half of those Rubinstein itemized on the attorney lien for LMM, which notes that Khorun calculated the GAL services for both minors together. Khorun represented that Rubinstein's services in connection with the SGAL included 11 hours and 5 minutes of her time, plus 6 hours and 40 minutes of paralegal time.

report when he, the SGAL, had spent less than 13 hours performing his services, including writing the report and tracking down information Rubinstein had failed to provide.

### D. Second Settlement Approval Hearing

¶21 On May 8, after reviewing the additional materials that Rubinstein had provided and the SGAL's response to the additional materials, the superior court awarded Rubinstein's office $15,000 in attorney fees for AGM's claim, based on the information in the itemized lien and calculations performed using the lodestar method. The superior court also approved the $1,500 attorney fee requested for LMM's claim, based on the contingent fee agreement.

¶22 On June 6, the court explained its attorney fee award for AGM's claim, noting that it had

> specifically asked [Rubinstein] to submit a petition that addressed the following factors: One, the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, and the terms of the fee arrangement between the client and the attorney. [Two,] information of the likelihood, if it was apparent to the client, that the acceptance of the particular employment precluded the attorney from other employment. [Three,] information as to whether the fee being charged by plaintiff's counsel was customarily charged in the locality for similar legal services. [Four,] the amount involved [and] the manner in which legal services were rendered and the results obtained[. Five,] information on time limitations imposed by the client or other circumstances, as well as the nature and length of the relationship between the attorney and client, the experience, reputation and ability of the attorney or lawyers performing the services, and whether the fee was fixed or contingent.[9]

RP (June 6, 2008) at 3-4. The superior court then discussed the information Rubinstein had provided for each of these

---

[9] RCW 4.24.005 and RPC 1.5(a) both identify these factors for use in determining whether a requested attorney fee is reasonable.

factors, noting specifically that Rubinstein had failed to provide information for several factors, despite the superior court's request. With regard to the time, labor, and difficulty involved in the case, the superior court stated that Rubinstein had "admitted on the record that it was a relatively easy case" and that "[n]ot much effort was necessary to be expended in order to secure [the policy limits settlement]." RP (June 6, 2008) at 4-5. Based on its analysis of the above factors, the superior court determined that $15,000 was a reasonable amount for AGM's attorney fees.

### III. Appeal

¶23 Rubinstein appealed. After Rubinstein filed its brief, neither State Farm nor the SGAL filed a brief. When we threatened to sanction both State Farm and the SGAL unless each filed a responsive brief within 15 days, State Farm and the SGAL moved to be exempted from Rubinstein's appeal, asserting that neither was the proper respondent for this appeal. Ruling on both motions for exemptions, we (1) relieved State Farm from the obligation to file a brief because the decision on appeal will not affect State Farm; (2) stayed the superior court's discharge of the SGAL; and (3) ordered the SGAL to file a respondent's brief.

¶24 In response to the SGAL's subsequent request, the superior court authorized him to hire appellate counsel to represent him on appeal in his capacity as SGAL. The superior court also ordered that the fees for such appellate counsel "shall be paid from the net proceeds of [AGM's settlement], *or as otherwise determined by [the superior] court, unless otherwise determined and ordered by the Court of Appeals*." Order Authorizing Settlement Guardian Ad Litem to Retain Appellate Counsel (Pierce County Super. Ct., Wash. Nov. 7, 2008) (appended to Mot. of Appellant to Strike Superior Ct. Order Authorizing SGAL To Retain an Appellate Counsel for the Minor, Apps. at 14-15, filed Nov. 13, 2008) (emphasis added).

## ANALYSIS

¶25 Rubinstein argues that the superior court arbitrarily and unreasonably reduced its attorney fee request for minor AGM's claim because it (1) lacked a reasonable basis for reducing Rubinstein's fees below those stated in the contingent fee agreement, (2) based its decision on Rubinstein's itemized lien, and (3) applied an improper method for determining Rubinstein's fees. The SGAL responds that because this is a case involving the representation of a minor child, the superior court properly applied SPR 98.16W and did not abuse its discretion when it reduced Rubinstein's fees for representing AGM.

¶26 We note at the outset that Rubinstein's contingent fee agreement with AGM's parents expressly allowed them to petition the court for a hearing to determine whether the requested attorney fee was reasonable.[10] We hold that the superior court did not act improperly in reducing Rubinstein's attorney fee request for services it performed for AGM.

### I. Standard of Review[11]

¶27 We review the superior court's interpretation of a court rule de novo. *Seto v. Am. Elevator, Inc.*, 159 Wn.2d 767, 772, 154 P.3d 189 (2007). When determining the meaning of a court rule, we apply the same principles we use to determine the meaning of a statute. *Gourley v.*

---

[10] Rubinstein argues on appeal that the SGAL should not be allowed to contest the reasonableness of attorney fees and that the SGAL's failure to obtain permission from AGM's parents to contest the amount of AGM's fees is fatal to the SGAL's claim. This argument ignores SPR 98.16W(e)(12), which requires the SGAL to make a recommendation regarding any fees requested. Moreover, Rubinstein fails to cite any authority to support its contention; thus, we do not address this argument further. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[11] The parties dispute the proper standard of review. Rubinstein asserts that we should review the superior court's attorney fee determination de novo. The SGAL argues that we should review the order for abuse of discretion. Both are partially correct.

*Gourley*, 158 Wn.2d 460, 466, 145 P.3d 1185 (2006). Where the rule's meaning is plain on its face, we must give effect to that meaning. *Gourley*, 158 Wn.2d at 466. In addition, we must construe a court rule to give effect to all of the language and to render no portion meaningless or superfluous. *Lakemont Ridge Homeowners Ass'n v. Lakemont Ridge Ltd. P'ship*, 156 Wn.2d 696, 699, 131 P.3d 905 (2006) (applying principle to statute); *State v. Hutchinson*, 111 Wn.2d 872, 877, 766 P.2d 447 (1989).

¶28 Where a statute or contract authorizes attorney fees, we review the superior court's determination of the amount of fees for abuse of discretion. *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126-27, 857 P.2d 1053 (1993); *see also Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007) (appellate court must find manifest abuse of discretion to reverse attorney fee award). The superior court abuses its discretion when it exercises its discretion on untenable grounds or for untenable reasons. *Chuong*, 159 Wn.2d at 538 (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

¶29 To the extent that we must determine whether SPR 98.16W accords the superior court discretion to modify an attorney fee agreement, we review the superior court's determination de novo. *Tradewell*, 71 Wn. App. at 126-27. But we review the amount of the superior court's attorney fee reduction for abuse of discretion.

## II. SPR 98.16W

¶30 Rubinstein argues that the superior court improperly reduced its attorney fee request by relying on the wrong documents. Specifically, Rubinstein contends that SPR 98.16W requires the superior court to consider only the minor's attorney's declaration and the fee agreement, not the itemized lien. Rubinstein is incorrect.

¶31 First, SPR 98.16W authorizes attorney fees for settlements on behalf of a minor and contemplates the superior court's exercise of discretion over these fees. For

example, SPR 98.16W(f) provides in relevant part, "At the time the petition for approval of the settlement is heard, the *allowance* and taxation of all fees . . . shall be considered and disposed of by the court." (Emphasis added.)

¶32 Second, this rule also contemplates that in determining a reasonable fee amount for representing a minor, the superior court will consider both the minor's attorney's submissions and the SGAL's recommendations. SPR 98.16W(g) requires "[a]ny attorney claiming fees, costs or other charges incident to representation of the [minor]" to file an affidavit or declaration in support of the request for fees or costs and to attach a copy of the written fee agreement. And SPR 98.16W(e)(12) requires the SGAL to include in his report "a discussion and *recommendation* regarding the expenses and fees for which payment is requested." (Emphasis added.)

¶33 In compliance with SPR 98.16W, the superior court correctly considered Khorun's declarations, itemized lien, and other documents in support of Rubinstein's requested fees and the SGAL's recommendation to reduce Rubinstein's fees for AGM. At the initial hearing, the superior court found that Khorun's declaration did not include sufficient information for it to rule on the request, in part because Rubinstein had not attached a copy of the fee agreement, as SPR 98.16W(g) requires. This failure prompted the superior court to order Rubinstein to submit additional information.

### III. No Abuse of Discretion

¶34 Rubinstein next argues that the superior court abused its discretion in reducing the requested amount for AGM's attorney fees. This argument also fails.

### A. Burden of Proof

¶35 Rubinstein first contends that the superior court improperly required Rubinstein to prove that its fees

were reasonable, rather than placing the burden of proof on the SGAL or State Farm. Rubinstein is incorrect. The attorney requesting fees bears the burden of proving the reasonableness of the fees.[12] *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993) (citing *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)); *In re Estate of Morris*, 89 Wn. App. 431, 434, 949 P.2d 401 (1998).

## B. Reasonable Basis for Reduction

¶36 Rubinstein next argues that the superior court disregarded its "valid contract without any reasons" and reduced its fees without a reasonable basis, on arbitrary grounds, and without articulating factual grounds. Br. of Appellant at 29. Rubinstein is incorrect.

¶37 Again, we note that Rubinstein's contingent fee agreement for representing AGM expressly allowed AGM to seek a court hearing to determine the reasonableness of the fees that Rubinstein requested under the agreement. In addition, RPC 1.5(a) provides that an attorney "shall not make an agreement for, *charge, or collect* an unreasonable fee." (Emphasis added.) The rule then lists the following factors for determining whether a fee is reasonable:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

---

[12] We reject Rubinstein's argument that the superior court's use of the lodestar method improperly shifted the burden of proof because Rubinstein fails to cite authority in support of its contention. *Cowiche Canyon*, 118 Wn.2d at 809.

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent; and

(9) the terms of the fee agreement between the lawyer and the client, including whether the fee agreement or confirming writing demonstrates that the client had received a reasonable and fair disclosure of material elements of the fee agreement and of the lawyer's billing practices.

RPC 1.5(a). RCW 4.24.005 contains virtually identical requirements for determining reasonable attorney fees in a tort action.

¶38  The superior court addressed each of these factors in determining that Rubinstein's contingent fee agreement was not reasonable with respect to AGM's claim. The superior court found, by Rubinstein's own admission, that obtaining the policy limits settlement for AGM was relatively easy and required very little attorney effort—only 2½ attorney hours, plus 56 paralegal hours.[13] The record clearly shows that the superior court articulated its reasons for reducing Rubinstein's fees. And because the superior court based its reasons on the RPC 1.5(a) factors, it did not reduce Rubinstein's fees arbitrarily. We hold, therefore, that the superior court did not abuse its discretion in reducing Rubinstein's requested attorney fee award.

### IV. METHOD FOR DETERMINING REDUCED FEES

### A. RCW 4.24.005

¶39  Rubinstein further argues that (1) the superior court should have used the RCW 4.24.005 factors, rather than the

---

[13] Based on his investigation, the SGAL concluded that "no more than a few hours of attorney time and a few more hours of staff time were involved in this claim." CP at 40. And in response to our questioning during oral argument about the 30 hours allocated to "telephone communications," Khorun responded that much of the work on this case was done over the phone dealing with hospitals and medical billing departments.

lodestar method, to determine the appropriate amount of attorney fees; and (2) had the superior court used these factors, it "would have concluded that Rubinstein Law Offices provided good legal services and were entitled to the full amount of attorney's fee." Br. of Appellant at 16. Again, we disagree.

¶40 As we have noted above, the factors in RCW 4.24.005 and RPC 1.5(a) are virtually identical. And these factors, in turn, are virtually identical to those the superior court used in determining that Rubinstein's contingent fee agreement was unreasonable for AGM's claim.

¶41 Furthermore, the superior court was clearly skeptical about the claimed complexity of the case and the quality of services Rubinstein had rendered on AGM's behalf, given (1) Khorun's misleading excuse for failing to attend the first scheduled settlement approval hearing; (2) Khorun's false declaration that she had petitioned the court to appoint the SGAL, which, in fact, State Farm had done, not Khorun; and (3) the "scrivener's error" misidentifying Rubinstein's client and the payor insurance company in Khorun's declaration. RP (Mar. 28, 2008) at 43, 49. When the superior court asked if Rubinstein had submitted any documentation of the actual time counsel spent on behalf of the minor children, other than Khorun's declaration, such as billings or time records, Khorun simply replied, "No." RP (Mar. 28, 2008) at 48.

¶42 With respect to the first RCW 4.24.005(1) factor, time spent on the case relative to the complexity, the superior court noted that Rubinstein had spent only two and one-half hours of attorney time on AGM's case, which had settled immediately when AGM accepted State Farm's settlement offer of the $100,000 limit of the tortfeasor's insurance policy. The SGAL had reported to the superior court that awarding Rubinstein a one-third contingent fee against AGM's $100,000 settlement would disproportionately award Rubinstein with a "windfall" at the expense of compensating AGM fully. CP at 39. Reiterating that Rubinstein had spent a minimal amount of time acting on

AGM's behalf and had submitted very little evidence to suggest otherwise, despite the burden to prove the reasonableness of the requested fees, the superior court found $15,000 to be a more reasonable attorney fee amount for Rubinstein's representation of AGM.[14]

## B. Itemized Lien

¶43 Rubinstein also argues that the superior court erred in basing the attorney fee award on Rubinstein's itemized attorney lien because SPR 98.16W neither requires nor authorizes the court to look beyond the attorney's declaration and the written fee agreement. Disagreeing, we hold that the superior court did not abuse its discretion by considering Rubinstein's submitted itemized lien in its determination of the proper attorney fee award.

¶44 Contrary to Rubinstein's argument, SPR 98.16W does not limit the information that the superior court may use in considering whether to allow requested attorney fees. Notably, SPR 98.16W(g), which requires an attorney seeking fees for representation of a minor to submit a declaration, does not specify what the attorney must in-

---

[14] Rubinstein argues that this case is comparable to *Barrett v. Freise*, 119 Wn. App. 823, 82 P.3d 1179 (2003), in which Division One of our court upheld a contingency fee award. *Barrett* is markedly distinguishable, however. First, there is no indication that the contingent fee agreement in *Barrett* contained a similar provision, as in this case, allowing the client to seek court review of the reasonableness of the attorney fees. Second, Barrett challenged the trial court's finding that he failed to file a timely RCW 4.24.005 claim and the trial court's subsequent ruling that it would not consider the RCW 4.24.005 claim; Barrett did not challenge the trial court's application of the reasonable attorney fee factors, as Rubinstein does here. *Barrett*, 119 Wn. App. at 847.

Finally, *Barrett* was a considerably more complicated personal injury case in which the work Barrett's attorney performed was significantly more substantial than the work Rubinstein performed here. Barrett's attorney (1) obtained two policy limit settlement offers from two separate insurers, one of which required active negotiation; (2) fought to have the subrogation lien waived entirely; (3) deposed parties involved in the accident; (4) negotiated extra coverage with the medical insurer; and (5) investigated a dram shop claim against the tavern that served alcohol to the motorist who caused the accident. *Barrett*, 119 Wn. App. at 828-30. In contrast, Rubinstein spent only two and one-half hours of attorney time on AGM's case, including accepting the policy-limit settlement that State Farm offered on its own initiative, without requiring any negotiating by Rubinstein. *Barrett* is not applicable here.

clude in the declaration. Here, however, the superior court could not rely solely on Khorun's declaration because the information she chose to include was insufficient for the superior court to determine whether the requested fee was reasonable. The inadequacy of this declaration caused the superior court to request additional information from Rubinstein. In response to this request, Rubinstein submitted its itemized attorney lien, which Rubinstein now argues on appeal the superior court should not have considered.

¶45 Rubinstein's itemized lien included the number of hours Rubinstein attorneys and paralegals spent working on AGM's case as well as Rubinstein's customary billing rate for those hours, which was $250 per hour for attorneys and $120 per hour for paralegals.[15] Having concluded that the contingent fee agreement was unreasonable with respect to AGM's claim, the superior court did not abuse its discretion by considering the itemized lien that Rubinstein had provided to supply some of the missing information.

## C. Lodestar Method

¶46 Last, Rubinstein argues that because the lodestar method[16] is not required by statute and has not been approved by the superior court, the court should have followed the requirements in SPR 98.16W and RCW 4.24.005 to determine the proper fee award.[17] This argument also fails.

---

[15] Rubinstein further argues that if attorneys are required to provide a statement of hours spent, SPR 98.16W should so specify because most settlements on behalf of minors arise out of personal injury cases and personal injury attorneys do not customarily keep track of their hourly time. This argument does not absolve Rubinstein of its obligation to justify the reasonableness of its requested attorney fees by some means that the court can assess.

[16] Under the lodestar method, the court multiplies the total number of hours the attorney reasonably expended by the reasonable hourly rate. *Mahler v. Szucs*, 135 Wn.2d 398, 434, 957 P.2d 632, 966 P.2d 305 (1998). The court may, in its discretion, adjust the lodestar result based on the contingent nature of success and the quality of the work performed. *Chuong v. Seattle City Light*, 159 Wn.2d at 541 (quoting *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 598, 675 P.2d 193 (1983)).

[17] Rubinstein also contends that applying the lodestar method renders parts of SPR 98.16W superfluous and meaningless. But Rubinstein does not develop this

¶47 Although there is no published opinion approving the lodestar method in a minor settlement case where SPR 98.16W applies, the lodestar method is, nevertheless, the clearly preferred method for calculating attorney fees in Washington. *Somsak v. Criton Techs./Heath Tecna, Inc.*, 113 Wn. App. 84, 98, 52 P.3d 43, 63 P.3d 800 (2002) (citing *Mahler v. Szucs*, 135 Wn.2d 398, 433, 957 P.2d 632, 966 P.2d 305 (1998)). And we are aware of no other required method for determining attorney fees. The superior court determined that Rubinstein failed to meet its burden of proving the reasonableness of its requested fees and that the contingent fee agreement attorney fee was unreasonable as applied to AGM's claim. We hold that the superior court did not abuse its discretion by applying the accepted lodestar method.[18]

¶48 Rubinstein further argues that the superior court acted arbitrarily in using the lodestar method to calculate attorney fees for AGM's claim because the court did not use the lodestar method to calculate attorney fees for LMM and, instead, approved the contingent fee agreement amount for LMM's claim. The record, however, supports the superior court's implicit agreement with the SGAL's opinion and recommendation that the fees Rubinstein calculated for AGM under the contingent fee agreement were unreasonable.[19] Thus, Rubinstein fails to show that the superior court acted arbitrarily in using different methods to determine reasonable attorney fees for these two differently situated clients.

---

contention with argument, as RAP 10.3(a)(6) requires. Accordingly, we do not further consider it.

[18] Although Rubinstein takes issue with application of the lodestar method in the first instance, Rubinstein does not argue that the superior court otherwise applied the lodestar method incorrectly.

[19] For example, LMM's injuries and medical expenses were far lower than AGM's. State Farm did not immediately offer to settle LMM's claim. And Rubinstein spent considerably more time settling LMM's claim than it did AGM's claim: Rubinstein attorneys spent 4.5 hours on LMM's case, as opposed to the 2.5 hours spent on AGM's case.

## V. SGAL Attorney Fees on Appeal

¶49 The SGAL asks us to award him attorney fees and costs on appeal and asks that Rubinstein, rather than AGM, pay them. The SGAL argues that (1) SPR 98-.16W(e)(14) entitles him to attorney fees and costs; and (2) paying his attorney fees out of AGM's settlement would defeat SPR 98.16W's underlying policy, which is to protect vulnerable members of our society such as minor AGM. We agree.

¶50 Rubinstein argues (1) that the SGAL is not entitled to attorney fees because "SPR 98.16W does not expressly grant an SGAL a right to recover reasonable attorney's fees on appeal," Reply Br. of Appellant at 5; (2) State Farm[20] should pay the SGAL's attorney fees on appeal because State Farm agreed to cover reasonable SGAL fees and supported the SGAL's motion to reduce Rubinstein's fees; or (3) alternatively, we should require the SGAL to pay his own attorney fees because

> decisions to ask for reduction of attorney's fees should not be made by SGALs lightly[, and SGALs] should not be allowed to routinely ask courts for reduction of attorney's fees, thus effectively disregarding the nature of contingent agreements.

Reply Br. of Appellant at 6. We disagree.

### A. SGAL Should Not Bear Attorney Fees for Responding to Frivolous Appeal

¶51 First, we disagree with Rubinstein that an SGAL is not entitled to attorney fees on appeal under SPR 98.16W or other authority. SPR 98.16W(c) authorizes appointment of an SGAL "to assist the court in determining the adequacy of the proposed settlement" for a minor. SPR 98.16W(c)(1). Compensation to the SGAL and reimburse-

---

[20] We note that State Farm is not a party to this appeal and, as far as we can tell from the record before us, did not participate in this appeal.

ment for expenses are inherent in this appointment process, especially in light of SPR 98.16W(d)'s requirement that the SGAL "shall be an attorney with at least five years of pertinent legal experience." Furthermore, SPR 98.16W(g) specifies the procedure for claiming attorney "fees, costs or other charges incident to representation of the affected person, from the claim proceeds or otherwise."

¶52 When Rubinstein appealed, both the SGAL and State Farm claimed they were not the proper parties to respond on appeal and sought their exemption. Although our court commissioner granted State Farm's motion for exemption, the commissioner denied the SGAL's motion. Instead, we ordered the SGAL to file a brief for the sole purpose of responding to Rubinstein's appeal. The SGAL then properly sought and received authorization from the superior court to hire counsel on appeal, which Rubinstein opposed.[21] The superior court clearly did not contemplate that the SGAL should bear the cost of hiring appellate counsel; instead, the superior court ordered that the fees for the SGAL's appellate counsel "shall be paid from the net proceeds of [AGM's settlement], *or as otherwise determined by [the superior] court."* Order Authorizing Settlement Guardian Ad Litem to Retain Appellate Counsel (Pierce County Super. Ct., Wash. Nov. 7, 2008) (appended to Mot. of Appellant to Strike Superior Ct. Order Authorizing SGAL to Retain an Appellate Counsel for the Minor, Apps. at 14-15, filed Nov. 13, 2008) (emphasis added).

¶53 In our view, "as otherwise determined by [the superior] court" might encompass the SGAL as a source in theory; but such action would be unreasonable. The SGAL is not a party to this appeal in his personal capacity; rather, he represents the interests of the minor, AGM, and he became involved in this appeal only because we ordered

---

[21] In a motion to strike superior court order, Rubinstein argued that the superior court's allowing the SGAL to retain appellate counsel improperly modified our commissioner's ruling. Our commissioner denied Rubinstein's motion because (1) the superior court acted properly under RAP 7.2(i) and (2) the superior court order was consistent with our commissioner's previous ruling. We agree with our commissioner.

him to respond to Rubinstein's appeal. As at trial, on appeal it would be improper and punitive to require the SGAL to pay his own attorney fees for representing a minor's interests by advocating that we affirm the superior court's finding that an attorney's fee request was unreasonable and the court's decision instead awarding a reasonable attorney fee.

¶54 Furthermore, such unsupportable punitive action might have a chilling effect on others deciding whether to undertake representation of a minor in a settlement action such as this. Such a result would be detrimental not only to the minor but to the superior court's ability to adjudicate the issues before it, contrary to SPR 98.16W(c)(1). Thus, we reject Rubinstein's argument that the SGAL himself should pay the attorney fees on appeal.

### B. State Farm Should Not Bear SGAL Attorney Fees on Appeal

¶55 Similarly, in theory State Farm could fall within the superior court's "as otherwise determined" source of payment of the SGAL's appellate attorney fees. But State Farm is no longer a party to this appeal and, in fact, early on settled AGM's claim for the policy limits without protest. Therefore, we reject Rubinstein's argument that State Farm should pay the SGAL's appellate attorney fees. In our view, then, the remaining sources for payment of the SGAL's appellate attorney fees are AGM's settlement monies and Rubinstein.

### C. Rubinstein, Not AGM, Should Pay SGAL Attorney Fees on Appeal

¶56 We hold that Rubinstein's appeal is frivolous under RAP 18.9(a). Accordingly, we award damages to the SGAL in

the amount of the attorney fees and costs that he incurred in defending against Rubinstein's frivolous appeal.[22]

¶57 RAP 18.9(a) authorizes us on our own initiative, or on motion of a party, to order a "party or counsel" who "files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by . . . the failure to comply." *See also Kearney v. Kearney*, 95 Wn. App. 405, 417, 974 P.2d 872, *review denied*, 138 Wn.2d 1022 (1999). We review the record in its entirety when making a determination of frivolity. *Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980). We resolve all doubts against finding an appeal frivolous. *Delany v. Canning*, 84 Wn. App. 498, 510, 929 P.2d 475, *review denied*, 131 Wn.2d 1026 (1997). An appeal is frivolous and an award of attorney fees may be appropriate when there are no debatable issues on which reasonable minds can differ, when the appeal is so devoid of merit that there is no reasonable possibility of reversal, or when the appellant fails to address the basis of the lower court's decision. *Matheson v. Gregoire*, 139 Wn. App. 624, 639, 161 P.3d 486 (2007).

¶58 Considering this litigation as a whole, this appeal is frivolous because the chance for reversal was slim at the time of filing and the appeal lacks merit. Rubinstein presents no debatable point of law, and it boldly asserts that the superior court's decision was arbitrary without developing an argument to illustrate any aspects of the superior

---

[22] In his brief, the SGAL argues that paying his appellate attorney fees out of AGM's settlement award is inconsistent with the purpose of SPR 98.16W and would cause an inequitable outcome here. As the SGAL noted in his recommendation to the superior court, for example, (1) AGM has continued to exhibit occasional symptoms arising from her accident injuries and (2) in order to ensure that AGM is compensated for her injuries, her appeal costs (represented by the SGAL) should be charged to Rubinstein because, but for its appeal, AGM would not have incurred these additional fees or costs.

Although this policy argument is compelling, we do not address it because we find Rubinstein's appeal to be frivolous, which justifies our ordering it to pay the SGAL's appellate attorney fees under RAP 18.9(a).

court's decision that lacked a factual basis.[23] Moreover, the record lacks evidence to support Rubinstein's contentions that the superior court (1) improperly reduced its attorney fees based on the itemized lien, (2) lacked reasonable grounds to reduce the requested fees, and (3) failed to comply with a proper method for determining attorney fees. On the contrary, the record shows that the superior court (1) properly considered Rubinstein's itemized lien as part of the evidence submitted, (2) had ample support for reducing the attorney fees based on the SGAL report and the minimal information Rubinstein provided, and (3) determined the proper amount of fees by carefully following the lodestar method.

¶59 As we noted earlier, Rubinstein bore the burden to prove the reasonableness of its attorney fees, yet it consistently failed to offer even minimally sufficient evidence from which the superior court could make an adequate determination of the appropriate fees. Further, the superior court placed Rubinstein on notice that its claim for attorney fees based on the contingent fee agreement lacked merit because of (1) Rubinstein's failure to provide adequate information from which a court could properly determine the appropriate amount of attorney fees and (2) the disingenuous approach that Rubinstein and Rubinstein attorney Khorun used throughout the settlement process.

¶60 First, Rubinstein incorrectly asserts on appeal that the superior court improperly reduced its requested attorney fees based on the itemized lien because the plain language of SPR 98.16W does not allow it. On the contrary, although an attorney declaration and copies of any written fee agreement are two documents the court must consider under SPR 98.16W(g), this rule does not limit the superior court to these two documents. Rather, SPR 98.16W contemplates the superior court's consideration of evidence beyond the attorney's declaration and the fee agreement. The plain

---

[23] In its brief, Rubinstein simply states, "[T]he court failed to articulate factual grounds." Br. of Appellant at 12. It neglects to develop this argument further.

language of SPR 98.16W(a) supports this conclusion in that it requires the court to "determine the adequacy of the proposed settlement . . . and reject or approve it." The court must also consider the SGAL's settlement report, which includes "a discussion and recommendation regarding any lien," SPR 98.16W(e)(8), and "a discussion and recommendation regarding the expenses and fees for which payment is requested." SPR 98.16W(e)(12). This language allows the superior court to consider the itemized lien in its award of attorney fees.

¶61 Second, the superior court accurately applied the lodestar method to the evidence provided and properly determined that a reduction in attorney fees was the appropriate outcome. In applying the lodestar factors at the original settlement hearing, the superior court addressed the lack of evidence in support of Rubinstein's requested attorney fees. Frustrated with Rubinstein's failure to submit the documents SPR 98.16W required, the superior court gave Rubinstein two additional weeks in which to gather the necessary information. The superior court specifically asked Rubinstein for information about (1) the time and labor required for the case, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal services properly, (4) the terms of the contingent fee agreement, (5) whether the fee being charged by counsel is customary in the locality for similar services, (6) whether acceptance of the case would preclude the attorney from other employment, (7) any time limitations imposed by the client or by the circumstances, (8) the nature and length of the relationship between attorney and client, and (9) the reputation and ability of the attorney performing the services.

¶62 In response to the superior court's request, Rubinstein submitted the contingent fee agreement and an overly broad summary of the hours spent on this case but failed to include a breakdown of who performed the services, when the services were performed, what the services consisted of, or any segregation of time spent as related to

the other parties involved, as the superior court had specifically requested. In the oral ruling at the conclusion of the settlement hearing, the superior court once again took great effort to highlight the lack of evidence Rubinstein submitted to support its claim for the requested fees. The superior court further noted Rubinstein's nonchalant attitude in cooperating with the court and Rubinstein's failure to submit the requested information.

¶63 With regard to the time involved, the difficulty of the case, and the skill level required, the superior court found that this was a relatively easy case, as supported by Rubinstein's own admission that obtaining AGM's settlement was a "fairly easy thing to do." RP (June 6, 2008) at 5. But once again, Rubinstein failed to submit any evidence in answer to the remaining questions the superior court raised. The superior court noted Rubinstein's failure and made its best effort to resolve these issues from the facts already present in the record. Because Rubinstein consistently failed to submit sufficient evidence from which the superior court could find that the requested fees were reasonable, Rubinstein's appeal to this court challenging the superior court's fee determination lacks both factual and legal support and, therefore, is frivolous.

¶64 Moreover, Rubinstein's failure to address the basis of the superior court's decision contributes to the frivolity of this appeal. *Matheson*, 139 Wn. App. at 639. Rubinstein contends on appeal that the superior court's fee reduction was arbitrary and without any factual basis, yet fails to address the ample evidence on which the superior court relied in its ruling. Nor does Rubinstein acknowledge its own negligence in failing to provide the information the superior court requested. Not only did the superior court rely on the SGAL's recommendation, as SPR 98.16W(e)(12) requires, but also the superior court provided an extensive oral ruling in which it explained the factual basis for its decision, as noted above, despite Rubinstein's failure to provide evidence that would support the fees requested. Because the superior court offered an extensive explanation

of its ruling and because Rubinstein fails to address the superior court's factual findings, this appeal is frivolous.

¶65 We affirm the superior court's attorney fee award for AGM's claim, and we award attorney fees and costs on appeal to AGM's SGAL in an amount to be determined by our court commissioner. In addition, exercising our authority under RAP 18.9(a) to sanction a party who files a frivolous appeal, we order Rubinstein to pay the SGAL's attorney fees and costs on appeal.

PENOYAR, A.C.J., and QUINN-BRINTNALL, J., concur.