[No. 54468-3-I. Division One. September 12, 2005.]

*In the Matter of the Guardianship of* LORETTA HOPE THORPE BEECHER.

WATSON B. BLAIR, *Appellant*, v. LORETTA HOPE THORPE BEECHER, *Respondent*.

*Gregory J. Hollon, Gregory G. Schwartz,* and *Michael D. Helgren* (of *McNaul Ebel Nawrot & Helgren, P.L.L.C.*), for appellant.

*J. Ronald Sim* and *Vanessa S. Power* (of *Stoel Rives, L.L.P.*), for respondent.

¶1 Agid, J. — Loretta Beecher, an alleged incapacitated person (AIP), hired attorney Watson B. Blair to represent her in the guardianship proceedings her stepson initiated against her. After four months, during which Blair filed several motions disputing various aspects of the proceedings, the petitioner and guardian ad litem (GAL) brought a motion disputing Blair's fees and costs. The trial court ultimately cut Blair's fees by almost half. Blair appeals, arguing that the court did not have authority to review his fees because Beecher was never adjudicated to be an incapacitated person and neither Beecher nor her attorneys-in-fact disputed his fees. We agree.

¶2 Because RCW 11.88.045(2) incorporates the fee review provisions of RCW 11.92.180 that govern guardian fees, and guardians are appointed only after a finding of incapacity, the court can review fees and costs under the guardianship statute only after an adjudication of incapacity. Until then, an *alleged* incapacitated person retains the right everyone else has to hire and pay the attorneys of her choice. No court ever found Beecher was incapacitated, so the trial court did not have authority to review Blair's fees. We reverse and remand to vacate the judgment against Blair.

## FACTS

¶3 In May 2003, Loretta Beecher's stepson, Jon Thorpe, petitioned King County Superior Court for guardianship of Beecher's person and estate under RCW 11.88.030. The court appointed Julie Schisel as GAL. Beecher hired Watson Blair, who had represented her on various other

legal matters over the previous two years, to represent her in the guardianship proceedings.[1] Beecher instructed Blair to dispute any attempts to restrict her autonomy, and Beecher and her attorneys-in-fact, Peter and Evelyn Kirton, agreed to a contract with Blair which stated:

> You have told me that you desire to resist and to defend against a guardianship aggressively and "at all costs." I will keep you abreast of the costs and will advise you of your options from time to time. The costs of an adversarial proceeding can be extremely high. We strongly recommend that you review and reconsider the strategy with some regularity and with an eye on the projected costs.

Blair's rate was $300 per hour, the same rate he had charged Beecher for other services during the previous two years.

¶4 Between June and September 2003, Blair aggressively challenged the guardianship proceedings. He filed motions seeking, among other things, Schisel's removal as GAL, dismissal of the guardianship petition, nondisclosure of Beecher's medical reports, and revision or reconsideration of several of the commissioner's rulings. Blair also challenged Thorpe's standing and moved for summary judgment before the GAL filed her final report or finished her investigation. The court denied all the motions. Thorpe and Schisel disputed Blair's fees as unreasonable and unnecessary. On October 10, 2003, the court commissioner held a hearing at which she required all parties to present their fees and costs for review and approval. Neither Beecher nor her attorneys-in-fact disputed Blair's fees or costs.

¶5 After extensive discussion of Blair's fees, the commissioner found that

> RCW 11.88.045 refers with respect to the AIP's attorneys' fees to RCW 11.92.180, which allows the court to determine whether they are just and reasonable and to allow, and by

---

[1] As required by RCW 11.88.045(2), Blair petitioned for an order appointing him as Beecher's counsel. A court commissioner entered the order on June 5, 2003.

implication disallow, those fees that the court finds are not reasonable. Mr. Blair's fees and costs are subject to review by this Court under RCW 11.88.045.

The commissioner went on to find Blair's fees, which totaled $110,740, were "unreasonable and inappropriate in light of this matter." She ordered him to repay Beecher $47,500 of the $86,500 she had already paid Blair, approving only $39,000 of his fees. Blair withdrew as Beecher's attorney because of the conflict of interest the order created.

¶6 The trial court denied Blair's motion for revision, affirming the commissioner's ruling in all respects except the actual amount awarded to Blair, which it increased to $53,207.56. With Beecher represented by new counsel, the parties reached an agreement, and on May 28, 2004, the petition for guardianship was dismissed. On June 1, 2004, the trial court entered a judgment for Beecher against Blair in the amount of $33,292.44 plus interest.

## DISCUSSION

■ ¶7 Blair argues that the trial court did not have authority to review his fees because Beecher had a valid durable power of attorney in place, she and her attorneys-in-fact approved Blair's fees, and, most importantly, she was never adjudicated as incapacitated.[2] Although Beecher has never disputed or refused to pay Blair's fees, her new attorney argues that Washington law does not limit the situations in which a court may review an AIP's attorney's fees.[3] We review issues of statutory interpretation de novo.[4] A court looks first at a statute's plain language to determine

[2] Blair challenges the court commissioner's finding that he conceded at the October 10, 2003 hearing that the trial court had authority to approve his fees and to decide what fees should be approved. At that hearing Blair said he did not dispute the court's authority to review the AIP's attorney's fees "in the right circumstance but the court has to balance that authority against Ms. Beecher's right to contract and a right to defense and a right to choose, and decide how she prefers to allocate her assets." Even if that was a concession, the court must still have statutory authority to proceed.

[3] On November 24, 2003, at Blair's request, Beecher's new attorney reviewed Blair's motion for revision of the commissioner's order and Beecher's declaration

legislative intent.[5] If the plain language is ambiguous, the court may determine intent by reviewing the statute's legislative history.[6] We look at the statute as a whole, and our interpretation must not create an absurd result.[7]

¶8 RCW 11.88.045 provides in part:

(1)(a) Alleged incapacitated individuals shall have the right to be represented by willing counsel of their choosing at any stage in guardianship proceedings. . . .

(b) Counsel for an alleged incapacitated individual shall act as an advocate for the client and shall not substitute counsel's own judgment for that of the client on the subject of what may be in the client's best interests. Counsel's role shall be distinct from that of the guardian ad litem, who is expected to promote the best interest of the alleged incapacitated individual, rather than the alleged incapacitated individual's expressed preferences.

. . . .

(2) During the pendency of any guardianship, any attorney purporting to represent a person alleged or adjudicated to be incapacitated shall petition to be appointed to represent the incapacitated or alleged incapacitated person. Fees for representation described in this section shall be subject to approval by the court pursuant to the provisions of RCW 11.92.180.

RCW 11.92.180 covers guardian and limited guardian compensation and expenses:

A guardian or limited guardian shall be allowed such compensation for his or her services as guardian or limited guardian as the court shall deem just and reasonable. Guardians and

in support of Blair's motion. He stated that he had "no objection" and told Blair "good luck."

[4] *Castro v. Stanwood Sch. Dist. No. 401*, 151 Wn.2d 221, 224, 86 P.3d 1166 (2004).

[5] *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 894, 83 P.3d 999 (2004).

[6] *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002). As Blair points out, there is no legislative history about courts reviewing an AIP's attorney's fees.

[7] *Strain v. W. Travel, Inc.*, 117 Wn. App. 251, 254, 70 P.3d 158 (2003), *review denied*, 150 Wn.2d 1029 (2004).

limited guardians shall not be compensated at county or state expense. Additional compensation may be allowed for other administrative costs, including services of an attorney and for other services not provided by the guardian or limited guardian. . . . If the court finds that the guardian or limited guardian has failed to discharge his or her duties as such in any respect, it may deny the guardian any compensation whatsoever or may reduce the compensation which would otherwise be allowed. . . . [8]

¶9 RCW 11.92.180 applies to guardians and limited guardians, who may be appointed only if an AIP is actually found to be incapacitated. Under RCW 11.88.020(1), any suitable person over the age of 18 may "be appointed guardian or limited guardian of the person and/or the estate of an *incapacitated* person. "[9] (Emphasis added.) Similarly, RCW 11.88.010(1) provides that the superior court has "power to appoint guardians for the persons and/or estates of *incapacitated* persons."[10] And under RCW 11.88.010(2), the court has the "power to appoint limited guardians for the persons and estates . . . of *incapacitated* persons."[11]

¶10 So a court could not possibly review a guardian's fees before the adjudication because no guardian is or can be appointed until *after* the court has ruled on the petition. Since RCW 11.88.045 incorporates the guardian fee review provisions, a court's statutory review of an AIP's attorney's fees must also be limited to situations where there has been a determination that the AIP is in fact incapacitated. Until that time, she has the same autonomy and rights as any other person. As Beecher was never adjudicated to be an incapacitated person, the guardianship statute did not provide a basis on which the trial court could review Blair's fees.

---

[8] RCW 11.92.180.

[9] (Emphasis added.)

[10] (Emphasis added.)

[11] (Emphasis added.)

¶11 The overall statutory scheme supports this conclusion. The legislative intent of the guardianship statute is "to protect the liberty and autonomy of all people of this state, and to enable them to exercise their rights under the law to the maximum extent, consistent with the capacity of each person."[12] Beecher had the right to be represented during the guardianship proceedings by counsel of her choosing. She chose Blair, an attorney with whom she was familiar from his previous work on her behalf. He provided a detailed contract stating his hourly rate and warning of the potential for high costs inherent in Beecher's litigious approach to defending her autonomy. Beecher and her attorneys-in-fact approved. Since Beecher never lost her capacity to contract, there was no basis on which or reason to invalidate her contract with Blair.

¶12 In addition, Beecher and her attorneys-in-fact approved the fees Blair charged during the proceedings. Even after the court commissioner's ruling on October 10, 2003, Beecher wished to retain Blair and pay his fees, stating that Blair had served her well in the guardianship proceedings and that she had "no objections to the fees that [Blair] has billed me and that I have paid to date." Thorpe and Schisel did not have standing to initiate the fee dispute unless and until Beecher was found to be incapacitated by a court. Only Beecher or her attorneys-in-fact could dispute Blair's fees.[13] Even if they had disputed Blair's fees, the Rules of Professional Conduct, specifically RPC 1.5, not the guardianship statute, provided the remedy.[14]

---

[12] RCW 11.88.005. The legislature further recognizes that people with incapacities have unique abilities and needs, and that some people with incapacities cannot exercise their rights or provide for their basic needs without the help of a guardian. However, their liberty and autonomy should be restricted through the guardianship process only to the minimum extent necessary to adequately provide for their own health or safety, or to adequately manage their financial affairs. *Id.*

[13] Although the record is inconclusive, Blair argued in his reply brief and at oral argument that Beecher herself eventually sought entry of judgment against him only as a condition of dismissing the guardianship proceeding. Beecher did not dispute this point.

[14] RPC 1.5 requires that an attorney's fees be reasonable.

¶13 We reverse and remand to the trial court to vacate the judgment against Blair.

KENNEDY and APPELWICK, JJ., concur.