[No. 40598-9-II.    Division Two.    December 11, 2012.]

*In the Matter of the Guardianship of* SEAN RAYMOND COBB.

394

*Mark E. Didrickson*, for appellant.

*Lorraine Scott*, pro se.

¶1 VAN DEREN, J. — Christine Scott and Daniel Cobb appeal the trial court's rulings following trial to determine whether their younger brother, Sean Raymond Cobb, is incapacitated and in need of a guardian. The trial court found Sean incapacitated and appointed Christine and Daniel's sister, Lorraine Scott, as Sean's limited guardian.[1] Christine and Daniel appeal the trial court's guardianship determination on Sean's behalf and its denial of their request for a new trial. In the published portion of this opinion, we discuss their standing to assert claims on behalf of Sean and the trial court's denial of their CR 59 motion for a new trial, which they assert denied them their procedural due process rights and violated the appearance of fairness doctrine. In the unpublished portion, we address their claims that (1) the guardianship statutes are unconstitutional as applied to Sean, (2) the trial court abused its discretion by denying Sean's demand for a jury trial contained in a writing handed to the judge during Sean's testimony at the end of the trial, (3) the trial court denied Sean's procedural due process rights by relying on the guardian ad litem's (GAL) final report, and (4) the trial court abused its discretion in applying the physician/ patient privilege to limit testimony at trial. We hold that Christine and Daniel do not have standing to assert claims

---

[1] Because several of the parties are family members who share the same last name, we use the parties' first names for clarity.

on Sean's behalf and that the trial court's denial of their CR 59 motion for a new trial did not violate procedural due process or the appearance of fairness doctrine. Thus, we affirm. We also impose sanctions jointly on Christine, Daniel, and their attorney under RAP 18.9 for pursuing this frivolous appeal.

## FACTS

¶2 Sean is an adult with developmental disabilities and a severe hearing loss. Sean has six older siblings: Daniel, Christine, Lorraine, Susan Didrickson, Joyce Cobb, and Dianne Gruginski. Sean's mother, Carmen Cobb, provided for Sean's care until her death in July 2009. Before Carmen died, she lived with Sean and Lorraine in Lorraine's home in Elma, Washington.

¶3 On September 4, 2009, Susan, Joyce, and Christine filed a petition seeking to be appointed Sean's coguardians. On November 6, Lorraine filed a cross petition, seeking to be appointed Sean's guardian. On December 31, Daniel also filed a cross petition, seeking to be appointed Sean's guardian. On January 15, 2010, Susan and Joyce withdrew their guardianship petition. Trial occurred on the siblings' guardianship petitions on February 11, 2010. At the start of trial, Christine withdrew her guardianship petition and, instead, supported Daniel's petition. The trial court appointed Dee Grubbs to serve as Sean's GAL. Christine, Lorraine, and Daniel filed objections to the GAL's final report filed on January 19, 2010.

¶4 Before Sean's therapist, Dr. Serena Meyer, began her testimony, the trial court stated, "I will advise you that I've been informed that [Sean] has not waived physician/patient privilege with regard to your communications, so you should not testify with regard to anything in that case." Report of Proceedings (RP) (Feb. 11, 2010) at 77. During Daniel's pro se direct examination of Meyer, the following exchange took place:

[Daniel]: Okay. Do you have any reasons to believe that Sean has been in dangerous or threatening situations since his mother died?

[Lorraine's counsel]: Objection. I don't know what the foundation for that would be other than communications with her patient.

[Trial court]: I think that's the question, whether she has reason to believe that.

[Meyer]: Yes, I have.

[Daniel]: And if so, what was it?

[Lorraine's counsel]: Objection on the basis of privilege.

[Trial court]: Well, if you can answer without discussing the privilege—without violating the privilege.

[Meyer]: I did file a report through Adult Protective Services.

[Daniel]: How did it affect him?

[Meyer]: I don't think I can answer that on account of privilege.

RP (Feb. 11, 2010) at 88-89. None of the parties objected to Meyer's assertion of the physician/patient privilege in refusing to answer Daniel's question.

¶5 Sean was the final witness at trial. During the direct examination by his counsel, the following exchange took place:

[Sean's counsel]: . . . You have indicated in the past thoughts about a professional guardian or a family guardian. How do you feel at this time about a professional guardian or a family guardian?

[Sean]: Family guardian, no, I don't know.

[Sean's counsel]: Don't know? Okay.

[Sean]: I got it right here.

. . . .

[Sean's counsel]: —[C]an you tell me, whose writing is this?

[Sean]: Mine.

[Sean's counsel]: When did you write this?

[Sean]: Last night.

[Sean's counsel]: And what is this about?

[Sean]: Write everything, what I want—what I want guardian to—

[Sean's counsel]: And who did you want to have this information?

[Sean]: The Judge.

[Sean's counsel]: I would like to offer this as an exhibit of his wishes.

RP (Feb. 11, 2010) at 199-200. The trial court admitted Sean's letter as an exhibit without objection.

¶6 After Sean completed his testimony, the trial court addressed Sean's letter:

[Trial court]: . . . All right. I did have the opportunity to review [Sean's letter]. It does have one part of it that, I guess, causes me a little concern. There's a jury demand in here, so—

(LAUGHTER)

[Sean's counsel]: That was just recently added.

[Trial court]: —[A] little late in the proceedings, but that's certainly something that [Sean]—have you talked to [Sean] about that?

[Sean's counsel]: Yes, we've talked a number of times on that and it has been his repeated request, first of all, that things would be able to come to an agreement outside of court, and so we have repeatedly worked on trying to come to an agreement that would work for everyone, and have not been able to.

[Sean]: Yeah.

[Trial court]: That would have been great, yeah.

[Sean's counsel]: Yeah, and that has repeatedly been his request.

[Trial court]: Okay.

[Sean]: Yeah, because (inaudible) didn't go for that one.

RP (Feb. 11, 2010) at 202-03. There was no further discussion of Sean's letter or his apparent jury request.

¶7 The trial court concluded that Sean was an incapacitated person within the meaning of chapter 11.88 RCW and appointed Lorraine as limited guardian of his person and estate, finding that Lorraine was "a fit and proper individual as required by RCW Chapter 11.88 to be appointed as guardian." Clerk's Papers at 181.

¶8 Christine and Daniel filed an unsuccessful joint CR 59 motion for a new trial. Following hearing on the motion, the trial court's oral ruling explained why it rejected each of the petitioners' asserted grounds for a new trial.[2] The trial

---

[2] The trial court's oral ruling on Christine and Daniel's CR 59 motion provided in part:

A [m]otion for [n]ew [t]rial was filed . . . alleging five grounds. I'll deal with each of the grounds separately.

The first ground was that the alleged incapacitated person was denied a jury trial that he requested based on a letter that he presented to me during the testimony that he gave in this case. I denied the new trial on that basis on several grounds. First, it's my judgment that the person raising the issue has no standing to raise it.

Second, it wa[s] clear to me from the letter and the consultation that I had with Sean and his counsel at the time that he was in fact not requesting a jury trial, that he had an opportunity to speak with his attorney about that, was not requesting a jury trial and that his use of the phrase was actually a way that he was trying to indicate that he wanted people to get along and settle this matter out of court without the need for a jury trial. Or any trial at all, for that matter.

And third, any indication that the jury trial should have been held was harmless. All agreed that there was a need for a guardian to some extent. Sean agreed to that to some extent. And the jury trial would be on the basis of whether capacity is involved not on the—who should be guardian.

So, for those reasons, there's no basis for holding a . . . jury trial on that issue.

The second basis alleged for a new trial was that inadmissible testimony was given in writing. My ruling on that is that the [m]otion for a [n]ew [t]rial is denied.

I did indicate that people who were submitting written materials would have to be available by telephone for cross-examination. And I gave all parties a full opportunity to cross-examine those people that they wish[ed] to, to the extent that a person was not called, a—written materials were not considered by me. . . .

There was no objection by [Daniel] or Christine . . . regarding the procedure used. . . . Their failure to object to the procedures used waives any—any complaint about the method of considering the testimony of the out-of-area witnesses. . . .

The third issue . . . is that the trial court sua sponte asserted privilege on behalf of . . . Meyer in her conversations with Sean. The record is clear that I

court issued a written order denying the CR 59 motion the same day. The trial court then addressed a CR 11 motion for sanctions by Lorraine against the attorney who had assisted Christine and Daniel in filing their CR 59 motion:

> Well, the Court considered the [CR 11] motion carefully because, frankly, it does appear to me that quite a few of these things are matters that are not well grounded in either fact or law. And it appears to me that the Motion for New Trial is basically an attempt to delay these proceedings further. Proceedings which the Court will note, not all because of the present people moving for a new trial, but just in general, proceedings that were delayed far too long in the first place.
>
> And so, continuing to attempt to delay the proceedings causes the Court a great deal of concern that—and actually strengthens my determination that I picked the right person to be the guardian, someone who will start looking for—after Sean's interests rather than continuing to want to litigate each and every issue in this case.
>
> . . . .

did not assert that sua sponte, that both Sean and [his] attorney indicated that he was not waiving the privilege.

The ruling on specific assertions by . . . Meyer of the privilege was not an abuse of discretion. Most of them were not objected to[,] . . . so any objection to her assertion of the privilege as to a particular question was waived by the failure to pursue it further. Would have been glad to make a ruling on that if that was in fact a concern of any of the parties who were present at that trial.

. . . .

The fourth basis alleges the [GAL] in effect didn't do her duty. . . . I found that the [GAL]'s report, while not perfect, adequately expressed or addressed the issues she needed to address and that to the extent that I did not agree with them, then I based my decision on other evidence. So there's no basis for a new trial on that ground.

And the final basis alleged for new trial is that I used the wrong standard of proof in deciding the issues in the case. . . . I used the standards of clear and convincing evidence where it was necessary, and preponderance of the evidence where it wasn't necessary. Clear and convincing evidence demonstrated that Sean needed a guardian subject to the limitations on the guardian . . . .

And the guardian that I picked was based on a preponderance of the evidence. I don't think there's any case law that indicates that a trial court has to be convinced by some heightened standard that the person they're selecting is the right person for the job. I try to make sure it's the right person for the job, but the Court continues monitoring the person and requiring regular reports. And if they don't do their job in the future then they'll be removed.

RP (Mar. 12, 2010) at 22-26.

So, I'm supposed to be careful not to impose sanctions unless they—something is truly frivolous. And although this borders on it, I believe that it's as close to frivolous as can get without getting sanctions. I'm not going to impose sanctions in the case.

RP (Mar. 12, 2010) at 30-32. The trial court then entered a written order denying the CR 11 sanction motion. Daniel and Christine timely appeal.

## ANALYSIS

### I. STANDING

¶9 Apart from their individual claims that the trial court's denial of their CR 59 motion for a new trial violated their procedural due process rights and violated the appearance of fairness doctrine, Daniel and Christine attempt to assert issues on appeal on behalf of their incapacitated brother, Sean. As an initial matter, we must determine whether Christine and Daniel have standing to assert these issues on Sean's behalf.[3] Accordingly, our initial analysis is limited to this threshold question. We hold that under these circumstances Christine and Daniel do not have standing to assert their incapacitated brother's appeal rights.

¶10 Standing is a question of law, which we review de novo. *In re Guardianship of Karan*, 110 Wn. App. 76, 81, 38 P.3d 396 (2002). In general, a person lacks standing to vindicate the constitutional rights of a third party. *State v. Rosas Gutierrez*, 50 Wn. App. 583, 591-92, 749 P.2d 213 (1988) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *Singleton v. Wulff*, 428 U.S. 106, 113-14, 96 S. Ct. 2868, 49 L. Ed. 2d 387 (1976)). But a litigant may have standing to vindicate the rights of a third party where (1) the litigant has suffered an injury-in-fact, giving him or her a sufficiently concrete interest in the outcome of the disputed issue; (2) the litigant has a close relationship to the

---

[3] We note that Christine and Daniel do not contend that they have standing to raise these errors in their own right.

third party; and (3) there exists some hindrance to the third party's ability to protect his or her own interests. *Ludwig v. Dep't of Ret. Sys.*, 131 Wn. App. 379, 385, 127 P.3d 781 (2006).

¶11 Christine and Daniel purport to vindicate Sean's procedural due process rights, assert evidentiary errors, and claim that the guardianship statutes are unconstitutionally vague as applied to Sean. They do not, however, contend that these asserted errors led to an erroneous incapacity determination or resulted in an erroneous appointment of Lorraine as Sean's guardian. Because none of the asserted errors implicate Sean's ability to protect his interests through his appointed guardian, Christine and Daniel do not have standing to raise those issues on their brother's behalf.[4]

¶12 In their supplemental brief, Christine and Daniel also assert that they may raise issues in this appeal on behalf of Sean as "next friends," citing *Gilmore v. Utah*, 429 U.S. 1012, 1014, 97 S. Ct. 436, 50 L. Ed. 2d 632 (1976) and *Vargas ex rel. Sagastegui v. Lambert*, 159 F.3d 1161, 1166 (9th Cir. 1998). We initially note that "next friend" standing is a concept recognized in federal habeas corpus proceedings and that Christine and Daniel do not cite any Washington State cases using a "next friend" standing analysis. *See Whitmore v. Arkansas*, 495 U.S. 149, 161-64, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990) (discussing history of the "next friend" standing doctrine); *see also* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended *or by someone acting in his behalf.*" (emphasis added)).

---

[4] In holding that Christine and Daniel do not have standing to assert these issues on Sean's behalf, we do not address whether a litigant would have standing to appeal a guardianship determination where the asserted errors implicated the incapacitated person's ability to protect his or her own interests, for example, where the litigant claims that the trial court erroneously appointed a guardian who did not meet the statutory qualifications listed in RCW 11.88.020.

¶13 In *Gilmore*, the United States Supreme Court simply entered an order lifting a stay of execution. But Christine and Daniel cite to a concurring opinion in *Gilmore* discussing "next friend" standing, about which the concurring opinion commented that "next friend" standing was inappropriate absent a showing that the defendant was incompetent to waive his right to appeal his death sentence. 429 U.S. at 1014 (Burger, J., concurring). In *Vargas*, the Ninth Circuit held that the defendant's mother had "next friend" standing to seek a stay of execution to allow the defendant to undergo a competency hearing. 159 F.3d at 1166-68. In so holding, the *Vargas* court noted that the defendant's mother met the "next friend" standing test by demonstrating (1) that the defendant was " 'unable to litigate his own cause due to mental capacity' " and (2) that as the defendant's mother, she presumptively represented the defendant's best interests. 159 F.3d at 1166 (quoting *Whitmore*, 495 U.S. at 165). These cases do not assist Christine and Daniel because even assuming that "next friend" standing analysis applies to litigants appealing guardianship determinations on behalf of a third party, Christine and Daniel still fail to demonstrate that Sean is unable to assert his rights through his appointed guardian.

¶14 Whether proceeding under traditional analysis of standing to assert rights for a third party or under the federal habeas corpus "next friend" analysis, a litigant must demonstrate the allegedly injured third party lacks the ability to vindicate his or her rights before a court may grant the litigant standing to act on the injured third party's behalf. *See, e.g.*, *Whitmore*, 495 U.S. at 163-64; *Ludwig*, 131 Wn. App. at 385. We hold that Christine and Daniel have not sufficiently demonstrated Sean's inability to vindicate his rights through Lorraine, his appointed guardian, and they therefore lack standing to appeal the trial court's rulings in the guardianship proceeding. Moreover, as the unpublished portion of this opinion holds, even assuming that Christine and Daniel have standing to vindicate Sean's rights, their claims lack merit.

## II. CR 59 Motion for a New Trial

¶15 Christine and Daniel also contend that the trial court's comments regarding their CR 59 motion for a new trial violated the appearance of fairness doctrine and violated their procedural due process rights. These contentions lack both support and merit, and we affirm the trial court's denial of Christine and Daniel's CR 59 motion for a new trial.

¶16 As an initial matter, Christine and Daniel have not preserved their claim that the trial court's posttrial comments violated the appearance of fairness doctrine. An appearance of fairness claim is not "constitutional" in nature under RAP 2.5(a)(3) and, thus, may not be raised for the first time on appeal. *State v. Morgensen*, 148 Wn. App. 81, 90-91, 197 P.3d 715 (2008); *see also City of Bellevue v. King County Boundary Review Bd.*, 90 Wn.2d 856, 863, 586 P.2d 470 (1978) ("Our appearance of fairness doctrine, though related to concerns dealing with due process consideration, is not constitutionally based."). Accordingly, Christine and Daniel have failed to preserve this issue for appeal by failing to object below.

¶17 But even if we address this unpreserved claim, Christine and Daniel's assertion that their due process rights were violated by the trial court's posttrial comments is also without merit. First, they fail to cite any authority that litigants moving for a new trial under CR 59 must be given due process considerations commensurate with those that apply to trial rights.[5] *See Trohimovich v. Dep't of Labor & Indus.*, 73 Wn. App. 314, 320, 869 P.2d 95 (1994) (declin-

---

[5] Christine and Daniel cite two cases that do not assist their claim that due process rights attach to a trial court's consideration of a CR 59 motion for a new trial. First, they cite to *State v. Anderson*, 44 Wn. App. 644, 648, 723 P.2d 464 (1986), which addressed a prosecutor's comment on a criminal defendant's postarrest silence. Second, they cite to Justice Stewart's concurring opinion in *Maness v. Meyers*, 419 U.S. 449, 472, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975), which concurring opinion discusses the right to counsel in relation to the privilege against compulsory self-incrimination. Christine and Daniel do not explain in

ing to address appellant's claim that trial court denied him due process by summarily rejecting his motions for reconsideration where appellant "cite[d] no authority for his argument that motions for reconsideration must be given due process considerations").

¶18 Second, and contrary to Christine and Daniel's assertions, the trial court did not deny their CR 59 motion for a new trial "because they sought post-trial relief." Br. of Appellants at 32. Here, the trial court discussed at length its legal reasons for denying each of Christine and Daniel's asserted grounds for a new trial. Then, after issuing its oral ruling denying a new trial, the trial court addressed Lorraine's CR 11 sanctions motion, which claimed Christine and Daniel's CR 59 motion was frivolous. The trial court ultimately denied Lorraine's request for CR 11 sanctions, but it expressed frustration over what appeared to be an attempt to delay the guardianship proceedings.

¶19 Because the trial court's stated reasons for denying Christine and Daniel's CR 59 motion do not exhibit an abuse of discretion and because Christine and Daniel fail to cite any legal authority supporting their due process argument, we affirm the trial court's denial of a CR 59 motion for a new trial. We hold that Christine and Daniel lack standing to raise their contentions on behalf of Sean and that their other claims have no merit or even arguable basis, and we affirm the trial court's guardianship determinations.

III. SANCTIONS FOR FRIVOLOUS APPEAL

¶20 RAP 18.9 provides that we may sua sponte consider and impose sanctions for a frivolous appeal. *Fid. Mortg. Corp. v. Seattle Times Co.*, 131 Wn. App. 462, 473, 128 P.3d 621 (2005). The rule states:

> The appellate court on its own initiative . . . may order a party or counsel . . . who uses these rules for the purpose of delay, files

---

their brief how these seemingly unrelated cases support their due process argument. Therefore, we do not further consider them.

a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court. The appellate court may condition a party's right to participate further in the review on compliance with terms of an order or ruling including payment of an award which is ordered paid by the party. If the award is not paid within the time specified by the court, the appellate court will transmit the award to the superior court of the county where the case arose and direct entry of a judgment in accordance with the award.

RAP 18.9(a).

¶21 Here, Lorraine moved below for CR 11 sanctions against Christine and Daniel's attorney, who filed the CR 59 motion for a new trial. In denying the motion, the trial court articulated its observation that some of the matters raised in that motion were not well grounded in fact or law and that the motion for a new trial was basically an attempt to delay the proceedings that had been delayed too long, without concern for Sean's interests but, rather, to litigate each and every issue. The trial court also stated that this conduct bordered "as close to frivolous as can get without getting sanctions." RP (Mar. 12, 2010) at 31-32.

¶22 Despite the trial court's clear message that continued litigation in this matter was edging on frivolity, Christine and Daniel pursued an appeal without merit and without standing. "A frivolous appeal is one which, when all doubts are resolved in favor of the appellant, is so devoid of merit that there is no chance of reversal." *Fid. Mortg.*, 131 Wn. App. at 473.

¶23 This appeal is not based on legal authority or even arguable facts or law. And it was done with an apparent lack of research about or knowledge of the proper role of the appellate court. *See* Wash. Court of Appeals oral argument, *In re Guardianship of Cobb*, No. 40598-9-II (Oct. 15, 2012), at 9 min., 45 sec. (on file with court). Thus, Christine and Daniel's appeal has absorbed the efforts and

time of both the appellate court and Sean's appointed guardian, for indiscernible benefits to Sean. For these reasons, we order that sanctions for filing this frivolous appeal shall be imposed jointly on Christine, Daniel, and their appellate counsel in the total sum of $500, to be paid to Lorraine Scott within 60 days of the issuance of the mandate in the matter.

¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

HUNT, J., and BRIDGEWATER, J. PRO TEM., concur.

Reconsideration denied January 24, 2013.

Review denied at 177 Wn.2d 1017 (2013).