FILED
COURT OF APPEALS
DIVISION II

2015 JUN 16 AM 8:30

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Guardianship of:<br><br>KEIKO DECKER,<br><br>An Alleged Incapacitated Person. | No. 45465-3-II<br><br><br>PUBLISHED OPINION |

WORSWICK, J. — Daniel Quick, former attorney for Keiko Decker, the incapacitated person in this adult guardianship case, appeals the trial court's order limiting Quick's attorney fees and disgorging fees already paid to him. He argues that the trial court erred by (1) entering orders reducing Quick's fees without authority to do so, or alternatively by (2) reducing Quick's fees without engaging in the proper analysis. Decker's guardian, Maurice Laufer, requests attorney fees on appeal under RAP 18.1 and RCW 11.96A.150. We affirm the trial court's orders and grant Laufer his requested attorney fees.

## FACTS

This appeal concerns only the issue of attorney fees in a guardianship case. In February, 2011, the Department of Social and Health Services petitioned for a guardianship over Decker, an elderly Japanese born woman, alleging she was incapacitated. The petition stated that Decker had been diagnosed with dementia, had been exhibiting paranoid behavior, and appeared to have been financially exploited. The Department estimated that Decker's assets were worth $708,700. Accordingly, the trial court's commissioner appointed a guardian ad litem (GAL) to represent Decker's best interests in the guardianship proceedings.

No. 45465-3-II

The GAL told the commissioner that Decker had refused to meet with or cooperate with him. He petitioned the commissioner to appoint Daniel Quick as Decker's attorney. Quick spoke some Japanese and was familiar with Japanese culture. On June 22, the commissioner signed an order appointing Quick as Decker's attorney. The order stated that Quick should be paid at Decker's expense, "with fees for representation subject to the Court's approval pursuant to RCW 11.92.180 and SPR 98.12."[1] Clerk's Papers (CP) at 32. It approved an hourly rate of $250.00 per hour and authorized 10 hours of representation. The order further stated that Quick "shall not spend more than 10 hours representing Ms. Decker without prior court approval," and that "[f]ees for time are limited to 10(TEN) [sic] hours at the rate of $250.00 per hour without further court order entered before incurring the additional time." CP at 32, 33.

Later, pursuant to the parties' stipulation, the commissioner entered an agreed order authorizing 40 additional hours for Quick. This order provided that Quick "shall not spend more than forty (40) hours representing Ms. Decker without prior court approval." Suppl. CP at 424. The total amount of court approved time was 50 hours.

On August 16, Quick petitioned for approval of several documents relating to his representation of Decker. He requested that the commissioner approve a fee agreement with Decker that contained no limitation on his time. He also requested prior approval of "reasonable time spent and costs incurred for taking this matter to trial according to the wishes of the alleged incapacitated person." Suppl. CP at 429. He did not specify a number of additional hours in this

---

[1] SPR 98.12 states that attorneys seeking compensation for work in estates cases must definitely and clearly set forth the amount of compensation claimed. SPR 98.12 does not affect the issues in this appeal.

request. Quick attached a copy of this unsigned, purported fee agreement with Decker. This fee agreement provided for hourly rates of $250 for Quick, $200 for associate attorneys, and $125 for paralegals. The commissioner reserved ruling on these requests without giving any reasons. The commissioner never approved the requests.

On December 20, apparently without prior notice to the GAL, Decker filed a durable power of attorney with the Pierce County Auditor, naming Quick as her attorney-in-fact. The durable power of attorney provided that Quick "shall have all powers of an absolute owner over the assets and liabilities of [Decker]." Suppl. CP at 470. The document provided: "It is the principal's intent that the power given to the attorney-in-fact designated herein be interpreted to be so broad as to obviate the need for the appointment of a guardian for the person or estate of the principal." Suppl. CP at 473. It named a certified professional guardian, Glenda Voller, as successor attorney-in-fact to be appointed "only upon the death, disability or incapacity of, or the written resignation by" Quick. Suppl. CP at 469.

Decker continued to be uncooperative with the GAL. On May 9, 2012, the GAL filed a report recommending either appointment of a limited guardian or a less restrictive alternative. On June 8, the Department moved for dismissal of the guardianship proceedings, arguing that an alternate arrangement in lieu of a guardianship would suffice. The Department expressed concerns about Quick: "Mr. Quick is acting in two, conflicting capacities, both as client (as Ms. Decker's attorney-in-fact) *and as his own* legal counsel." CP at 47. Thus, the Department suggested that Voller, the successor attorney-in-fact, be appointed attorney-in-fact. It argued that Decker might receive adequate protection and assistance through a less restrictive alternative such as the durable power of attorney, rather than a full guardianship.

3

Decker, through Quick, opposed the Department's motion to dismiss the guardianship. She argued that she should be able to defend against being deemed an incapacitated person through an adversarial process, rather than receive a less restrictive alternative. The commissioner denied the Department's motion to dismiss the petition, without giving any reasons.

Decker then moved to dismiss the petition for guardianship completely. The commissioner denied this motion.

At this time, Decker was 80 years old, had been involved in some recent car accidents, and had been diagnosed with dementia. Settlement negotiations ensued between the Department and Decker. Pursuant to these negotiations, Decker approved a proposal that her tax preparer, Maurice Laufer, should act as her guardian.

On May 7, 2013, the commissioner entered an order appointing Laufer as guardian of Decker's person and estate. The commissioner based her order on the GAL's written report, a medical and psychological report, and other documents. The order contained findings of fact and conclusions of law. The commissioner found that Decker's durable power of attorney naming Quick as her attorney-in-fact "is not in effect due to questions of Ms. Decker's capacity at the time she executed this document," that Decker "does not have the current capacity to execute a power of attorney instrument at this time," and that Decker "is capable of managing some personal and/or financial affairs, but is in need of the protection and assistance of a limited Guardian" of her person and estate. CP at 86. It ruled that Decker "is an Incapacitated Person within the meaning of [chapter 11.88 RCW], and a Limited Guardian of the Person [and] Limited Guardian of the Estate should be appointed." CP at 88.

The commissioner canceled the prior durable power of attorney in its entirety. She discharged Quick as Decker's attorney, and she ruled that "Daniel Quick PLLC may petition the court for additional fees and costs up until the 90 day hearing." CP at 95.

Quick moved for approval of his attorney fees. He requested approval of $118,110.65 that he had already been paid and for an additional $17,137.50 for an unspecified number of hours of representation. He submitted lengthy billing summaries. Quick submitted a copy of a *signed* attorney fee agreement between himself and Decker, dated October 20, 2011.

The commissioner approved a total of $30,000 for Quick's fees and costs. This sum appears to reflect 120 hours of work at $250 per hour, but the commissioner did not specify the number of hours she approved. The court commissioner ordered that Quick "shall pay to the Guardian the difference of anything paid over $30,000 within six months from today's date." CP at 331. The commissioner did not enter findings of fact and conclusions of law, but she did discuss this ruling on the record. She dismissed Quick's argument that Decker had agreed to his fees, saying:

> Regardless of the contract, you still are under a court order only to do a certain amount of work without further court authority. So you kind of took your own risk in that regard, because the court is always mindful of maintaining a substantial amount, try to limit litigation costs and keep as much money available for the alleged incapacitated person.

CP at 350-51. The commissioner reminded Quick that she had approved only 50 hours in her previous orders. The commissioner concluded that Quick's fees were not reasonable, stating:

> $100,000 plus is not reasonable in this kind of matter. No matter how hard or difficult Ms. Decker is, no matter how much of a defense she wants, you still have to be mindful of, you know, what kind of context this is. So, you know, I don't know what to say. You're authorized from (inaudible) calculation is like $12,500 is what the court okayed.

Now, I think that given the difficulty and the fact ultimately some additional funds over and above what was initially authorized makes sense, but nowhere near the 110 that you've already, I guess, received.

And I have to agree, it is somewhat unusual in the context of someone that's being brought before the court for concerns about exploitation to be receiving funds without the court's blessing.

CP at 367.

Quick moved the trial court to revise the commissioner's order. A trial court judge denied this motion to revise. Quick appeals.

## ANALYSIS

Quick argues that the trial court erred by failing to revise the commissioner's order reducing his attorney fees and disgorging fees he had already received. He argues that the trial court lacked the authority to reduce fees and that it violated Decker's due process rights by reducing fees accrued before her adjudication of incapacity. He also argues that, even if the trial court had such authority, it erred by reducing the fees without engaging in a proper analysis and making proper findings. We disagree.

### I. STANDARD OF REVIEW

In an appeal of a trial court's decision not to revise a court commissioner's decision, we review the trial court's decision, not the commissioner's. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). Where the trial court denied the motion to revise without making findings of its own, we deem that the trial court adopted the findings and conclusions of the commissioner. *State ex rel. J.V.G. v. Van Guilder*, 137 Wn. App. 417, 423, 154 P.3d 243 (2007).

We apply a two step review to attorney fee calculations. First, we review de novo the legal basis for awarding attorney fees, and then we review a discretionary award of attorney fees

for an abuse of discretion. *Gander v. Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012). We review an award of attorney fees in a guardianship case for an abuse of discretion. *In re Guardianship of Lamb*, 173 Wn.2d 173, 184, 265 P.3d 876 (2011); *In re Estate of Black*, 153 Wn.2d 152, 173, 102 P.3d 796 (2004).

We review issues of statutory interpretation, such as whether the trial court has authority to act under a statute, de novo. *In re Guardianship of Beecher*, 130 Wn. App. 66, 70, 121 P.3d 743 (2005). First, we look to the plain language of the statute to determine legislative intent. 130 Wn. App. at 70-71. Only if the plain language is ambiguous do we proceed to consider other sources of statutory intent, such as legislative history. 130 Wn. App. at 71. We look "at the statute as a whole, and our interpretation must not create an absurd result." 130 Wn. App. at 71. If a statute is plain and unambiguous, its meaning must be primarily derived from the language itself. *In re Guardianship of Johnson*, 112 Wn. App. 384, 387, 48 P.3d 1029 (2002). We do not delete language from an unambiguous statute. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

## II. TRIAL COURT HAD AUTHORITY TO LIMIT ATTORNEY FEES

Quick argues that the trial court lacked the authority to limit his attorney fees and to order disgorgement because Decker was never adjudicated incapacitated under RCW 11.88.045(2). Quick also argues that the trial court had no authority to limit his fees incurred prior to the May 7, 2013 trial court order appointing Decker's guardian. We disagree.[2]

---

[2] Guardian Laufer argues that Quick invited the error he claims, stating that he "invited binding court review when he prepared and presented the Agreed Fee Order." Br. of Resp't Laufer at 40. Laufer argues that cooperating with the Agreed Fee Orders constitutes invited error and that Quick should not be allowed to complain of this error on appeal. But Quick does not assign

No. 45465-3-II

A.  *Decker Was Adjudicated Incapacitated*

Quick argues that Decker was never adjudicated incapacitated under the guardianship statute because she agreed to a limited guardianship, and thus there was never an adversarial trial proving her incapacity. We disagree.

The guardianship statute does not contain a definition of "adjudge" or related terms. Black's Law Dictionary defines "adjudge" in relevant part as: "adjudicate," and "[t]o deem or pronounce to be." BLACK'S LAW DICTIONARY 47 (9th ed. 2009). "Adjudicate" means "[t]o rule upon judicially." BLACK'S LAW DICTIONARY 47 (9th ed. 2009).

Here, the commissioner held a hearing, considered evidence, and then entered findings of fact and conclusions of law finding that Decker "is capable of managing some personal and/or financial affairs, but is in need of the protection and assistance of a limited Guardian" of her person and estate, and ruling that Decker "is an Incapacitated Person within the meaning of RCW Chapter 11.88." CP at 86, 88. Under the statute's plain language, this constitutes an adjudication of Decker's incapacity. Quick's argument fails.[3]

---

error to the agreed fee orders initially limiting his representation of Decker; he instead assigns error to the commissioner's ruling on his motion for approval of attorney fees. Furthermore, because the agreed fee orders are not erroneous, we do not hold that Quick invited any error.

[3] Furthermore, Quick's argument leads to the absurd result that, where an allegedly incapacitated person is *so* incapacitated that no one contests the guardianship, there would never be an "adjudication" of incapacity because there was no adversarial process. It does not make sense to construe the statute to require an adversarial trial, expending all of the judicial and estate resources that a trial requires, before a court may "adjudicate" an incapacitated person's status. Our interpretation of a statute must not lead to absurd results. *Beecher*, 130 Wn. App. at 71.

8

B.    *Trial Court Could Limit Preadjudication Attorney Fees*

Quick next argues that the trial court did not have the authority to limit his fees from before the May 7, 2013 order deeming Decker incapacitated. He argues that the court had no way to determine when Decker lost the capacity to contract, so the trial court had no authority to reduce fees she willingly paid to him before May 7, 2013. Quick relies on the Division One case *In re Guardianship of Beecher* in support of this argument. *Beecher*, 130 Wn. App. at 72-73. We disagree, because the plain language of the guardianship statute requires the trial court to oversee attorney fees that are necessarily incurred before the adjudication of incapacity, and because *Beecher* is distinguishable.

The process to create a guardianship begins when a petition alleging a person's incapacity is filed in the trial court. RCW 11.88.010, .030. An allegedly incapacitated person has the right to be represented by counsel of his or her choosing. RCW 11.88.045(1)(a). If incapacity is established, the court appoints a guardian to help make decisions on that person's behalf. RCW 11.88.010(1). The trial court has the authority to appoint a guardian only for an incapacitated person. RCW 11.88.010(2). But the court may appoint a guardian ad litem to consult with an *alleged* incapacitated person about the guardianship proceedings. RCW 11.88.090(3).

"'Although governed by statute, guardianships are equitable creations of the courts and it is the court that retains ultimate responsibility for protecting the ward's person and estate.'" *Lamb*, 173 Wn.2d at 184 (quoting *In re Guardianship of Hallauer*, 44 Wn. App. 795, 797, 723 P.2d 1161 (1986)). Accordingly, the guardianship statute is intended to provide the courts "full and ample power and authority . . . to administer and settle . . . [a]ll matters concerning the

9

estates and assets of incapacitated . . . persons." RCW 11.96A.020(1)(a). The statute provides

*alleged* incapacitated individuals the right to "counsel of their choosing at any stage in

guardianship proceedings." RCW 11.88.045(1)(a). And

> *[d]uring the pendency of any guardianship*, any attorney purporting to represent a person *alleged or adjudicated* to be incapacitated shall petition to be appointed to represent the incapacitated or alleged incapacitated person. Fees for representation described in this section *shall be subject to approval by the court* pursuant to the provisions of RCW 11.92.180.

RCW 11.88.045(2) (emphasis added). Thus, under RCW 11.88.045(2), the court must oversee

both the appointment of and fees of an attorney for an alleged incapacitated person.

RCW 11.88.045(2) directs the trial court to use RCW 11.92.180 as the mechanism for

approval of attorney fees. By its terms, RCW 11.92.180 addresses fees of guardians or limited

guardians. But, as quoted above, RCW 11.88.045(2) plainly incorporates the fee provision of

RCW 11.92.180 as the mechanism for approval of attorney fees as well. RCW 11.92.180

provides:

> A guardian or limited guardian shall be allowed such compensation for his or her services as guardian or limited guardian *as the court shall deem just and reasonable.* . . . In all cases, compensation of the guardian or limited guardian and his or her expenses including attorney's fees *shall* be fixed by the court and may be allowed at any annual or final accounting; but at any time during the administration of the estate, the guardian or limited guardian or his or her attorney may apply to the court for an allowance upon the compensation or necessary expenses of the guardian or limited guardian and for attorney's fees for services already performed. . . . The amount of guardianship fees and additional compensation for administrative costs shall not exceed the amount allowed by the department of social and health services by rule.

(Emphasis added).

Thus, RCW 11.88.045(2)—the section of the guardianship statute that permits

representation of an alleged incapacitated person—explicitly provides that the fees of any

attorney representing an *alleged* incapacitated person *during the pendency of any guardianship* "*shall be subject to approval*" by the court under the procedure in RCW 11.92.180. (Emphasis added). The plain language of RCW 11.88.045(2) provides that the court has oversight over the appointment and compensation of an attorney representing an *alleged* incapacitated person during the pendency of the guardianship—that is, before a guardianship is established and an adjudication of incapacity has been made. To hold that a trial court has no authority over attorney fees incurred prior to adjudication would be to delete the word "alleged" where it appears twice in RCW 11.88.045(2). We must give effect to the entire statute. *Beecher*, 130 Wn. App. at 71. Thus, we hold that the guardianship statute clearly allows for court oversight of attorney fees in the case of people *alleged or* adjudicated to be incapacitated. RCW 11.88.045(2).

Nevertheless, Quick argues that the trial court lacked the authority to reduce fees that Decker paid him in the period prior to the May 7, 2013 court order adjudicating her incapacitated. He relies on the Division One case *In re Guardianship of Beecher*, 130 Wn. App. at 72-73. But the facts of *Beecher* are distinguishable from this case, and *Beecher* does not control our analysis.

In *Beecher*, the alleged incapacitated person hired an attorney to represent her in guardianship proceedings, and the trial court approved the attorney's appointment. 130 Wn. App. at 68-69, 69 n. 1. But, apparently, the trial court never entered an order prospectively limiting fees for the attorney. 130 Wn. App. at 69. Beecher told her attorney that she wanted to resist and defend against the guardianship at all costs. 130 Wn. App. at 69. Beecher was never adjudicated as incapacitated. 130 Wn. App. at 72.

The GAL challenged Beecher's attorney's fees. 130 Wn. App. at 69. The trial court ruled that the fees were excessive and unreasonable, and ordered the attorney to repay over half of the fees. 130 Wn. App. at 70. The attorney appealed, arguing that the trial court did not have the authority to limit his fees in his representation of an *alleged* incapacitated person whom the court never adjudicated to be incapacitated.

Division One agreed, holding that

the court can review fees and costs under the guardianship statute only after an adjudication of incapacity. Until then, an *alleged* incapacitated person retains the right everyone else has to hire and pay the attorneys of her choice. No court ever found Beecher was incapacitated, so the trial court did not have the authority to review [her attorney's] fees.

130 Wn. App. at 68. The court based this holding on the fact that RCW 11.88.045(2) incorporates the fee review provisions of RCW 11.92.180, which governs guardian fees. 130 Wn. App. at 68. Because the statute permits the court to appoint a guardian only after there has been an adjudication of incapacity, the *Beecher* court reasoned that the trial court similarly obtains authority to review and limit attorney fees under the statute only after an adjudication of incapacity. The court held that "[s]ince Beecher never lost her capacity to contract, there was no basis on which or reason to invalidate her contract with [her attorney]." 130 Wn. App. at 73.

*Beecher* is distinguishable. Beecher was never adjudicated incapacitated, but Decker was. The holding of *Beecher*, by its terms, applies only where there was *never* an adjudication of incapacity. 130 Wn. App. at 68. In such cases, the alleged incapacitated person has never lost the right to contract. But, as described above, the guardianship statute's plain language permits the court to reduce preadjudication attorney fees *once there has been an adjudication*. RCW 11.88.045(2).

12

Because Decker was adjudicated incapacitated, *Beecher* does not apply to this case. Instead, the plain language of the statute makes clear that the court had the authority to oversee and reduce Quick's fees. We do not look beyond the plain language of the statute if it is clear. *Beecher*, 130 Wn. App. at 70.

C.     *Due Process—Quick Lacks Standing*

Quick further argues that the trial court violated Decker's due process rights by reducing Quick's attorney fees incurred prior to Decker's adjudication of incapacity. We do not entertain his challenge, because we hold that Quick lacks standing to vindicate Decker's due process rights.[4] As a fundamental principle, we refrain from deciding constitutional issues when a case can be decided on nonconstitutional grounds. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 752, 49 P.3d 867 (2002).

It is a general rule that "a person lacks standing to vindicate the constitutional rights of a third party." *In re Guardianship of Cobb*, 172 Wn. App. 393, 401, 292 P.3d 772 (2012). But a litigant may have standing where (1) he or she "has suffered an injury-in-fact, giving him or her a sufficiently concrete interest in the outcome of the disputed issue; (2) [he or she] has a close relationship to the third party; and (3) there exists some hindrance to the third party's ability to protect his or her own interests." *Cobb*, 172 Wn. App. at 401-02. A litigant purporting to vindicate a third party's constitutional rights bears the burden of demonstrating that "the allegedly injured third party lacks the ability to vindicate his or her rights." *Cobb*, 172 Wn. App. at 403.

---

[4] We may address standing sua sponte. *In re Recall of West*, 156 Wn.2d 244, 248, 126 P.3d 798 (2006).

In *Cobb*, the siblings of an incapacitated person purported to vindicate his due process rights. 172 Wn. App. at 402. The siblings did not argue that any asserted errors in the guardianship proceeding "led to an erroneous incapacity determination or resulted in an erroneous appointment" of the guardian. 172 Wn. App. at 402. Because none of the asserted errors implicated the incapacitated person's ability to protect his interests through his appointed guardian, we held that the challenging siblings did not have standing to raise the incapacitated person's due process rights. 172 Wn. App. at 402.

Here, Quick has suffered an injury in fact: the trial court disgorged his attorney fees. And he had a close relationship to Decker as her attorney during the pendency of the guardianship. But Quick does not meet the third prong of the test and thus cannot litigate Decker's due process rights: he has not shown that there is some hindrance to Decker's ability to protect her own interests. *Cobb*, 172 Wn. App. at 402-03. Quick does not argue that the incapacity determination was erroneous nor that Laufer cannot adequately protect Decker's interests. *See Cobb*, 172 Wn. App. at 402. Quick has not carried his burden of showing us that Decker lacks the ability to vindicate her own due process rights. We hold that Quick has not shown that he has standing to assert Decker's rights.

III. REDUCTION OF ATTORNEY FEES WAS PROPER

Quick next argues in the alternative that, even if the trial court had the authority to limit his attorney fees, it did so erroneously without engaging in the lodestar analysis[5] and without

---

[5] The lodestar analysis is an equation whereby a court determines whether the attorney expended a reasonable number of hours in the case, then determines whether the attorney's hourly rate was reasonable, and multiplies these figures to arrive at a reasonable sum of attorney fees. *Mahler v. Szucs*, 135 Wn.2d 398, 433-34, 957 P.2d 632, 966 P.2d 305 (1998) (*overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wn.2d 643, 659, 272 P.3d 802 (2012)).

entering proper findings. We disagree because a trial court is not required to conduct a lodestar analysis when determining compensation under the guardianship statute.

A.    *Lodestar Analysis Not Required for Attorney Compensation in Guardianship*

In general, trial courts should use the lodestar method when determining the award of attorney fees as costs. *Mahler v. Szucs*, 135 Wn.2d 398, 433-34, 957 P.2d 632, 966 P.2d 305 (1998) (*overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wn.2d 643, 659, 272 P.3d 802 (2012)). To perform its supervisory function and to permit appellate review under the lodestar analysis, the trial court must make findings of fact and conclusions of law supporting its decision. *Mahler*, 135 Wn.2d at 435.

While the lodestar method is generally accepted as the starting point for attorney fee determinations, it is not required in all contexts. Where the primary considerations for the fee award are equitable, courts are not required to apply the lodestar method to determine an award of fees. *See, e.g., In re Marriage of Van Camp*, 82 Wn. App. 339, 342, 918 P.2d 509 (holding that the lodestar method was not required to determine fee award in marital dissolution cases), *review denied*, 130 Wn.2d 1019, 928 P.2d 416 (1996). As stated above, statutory guardianships are "'equitable creations of the courts and it is the court that retains ultimate responsibility for protecting the ward's person and estate.'" *Lamb*, 173 Wn.2d at 184 (quoting *Hallauer*, 44 Wn. App. at 797).

The court, in overseeing guardianships, must weigh the competing concerns of individual autonomy and protection of incapacitated persons. RCW 11.88.005. This is not a typical situation wherein lodestar analysis is required, such as where a trial court awards attorney fees to the prevailing party. Here, the primary considerations for the fee award are equitable, and trial

15

courts are not required to apply the lodestar method. *See, e.g., Van Camp*, 82 Wn. App. at 342. But the trial court, in making its equitable decision, may balance lodestar factors when it determines just and reasonable fees.

Although consideration of reasonable hours and reasonable hourly fees may play a role, requiring a lodestar analysis does not make sense in the context of this statute. The lodestar method is intended to calculate costs awarded to a prevailing party. Typically, attorney fees are available only for successful claims. In a lodestar analysis, the court "should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time." *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). But under the guardianship statute, an attorney for an alleged incapacitated person need not succeed in contesting the guardianship to merit compensation. RCW 11.88.045(2) provides attorney compensation whether or not the attorney prevails in contesting a guardianship. The calculation of a reasonable attorney fee, therefore, is different in these two different contexts.

Furthermore, it would not make sense to construe the statute to require a trial court to use a lodestar analysis where, as here, the attorney has violated previous court orders limiting him to a certain number of hours of representation. If only a lodestar analysis were required here, attorneys appointed under the statute would have an incentive to bill hours in contravention of a trial court's order, and the trial court would then be required to analyze the reasonableness of such excessive hours under the lodestar method. This would render RCW 11.92.180 and 11.88.045(2) nearly meaningless, because regardless of the trial court's prospective limitation on attorney fees, the attorney could demand that the trial court compensate him for a reasonable number of hours retrospectively. Thus, we hold that a lodestar analysis is not required here,

although a court may consider the lodestar factors of reasonable hours and reasonable fees in arriving at a just and reasonable result.[6]

Instead of requiring a lodestar analysis, the guardianship statute itself contains guidance for the trial court in determining fees. RCW 11.92.180 provides:

> A guardian or limited guardian shall be allowed such compensation for his or her services as guardian or limited guardian *as the court shall deem just and reasonable*. . . . In all cases, compensation of the guardian or limited guardian and his or her expenses including attorney's fees shall be fixed by the court and may be allowed at any annual or final accounting; but at any time during the administration of the estate, the guardian or limited guardian or his or her attorney may apply to the court for an allowance upon the compensation or necessary expenses of the guardian or limited guardian and for attorney's fees for services already performed.

The guardianship statute's plain language allows the court to determine compensation "as [it] shall deem just and reasonable." RCW 11.92.180. Here, the trial court commissioner appointed Quick as an attorney under the statute as part of the guardianship proceedings for Decker. Quick was entitled to such compensation as the commissioner deemed just and reasonable for the limited amount of time the court appointed him as an attorney. The statute appears to contemplate that the trial court will determine just and reasonable compensation based on the competing equitable factors of compensating an attorney for his work, protecting the alleged incapacitated person's right to autonomy, and also protecting the incapacitated person's

---

[6] Quick argues that a lodestar analysis is required even in this procedural context, citing *In re Settlement/Guardianship of AGM*, 154 Wn. App. 58, 79, 223 P.3d 1276 (2010). In *AGM*, the trial court used a lodestar analysis to reduce attorney fees for a settlement guardian ad litem in a minor settlement case. 154 Wn. App. at 79. We held that the trial court did not abuse its discretion by using the lodestar method, and wrote in dicta that the lodestar method is the "clearly preferred method for calculating attorney fees." 154 Wn. App. at 79. But *AGM* addresses whether it was an abuse of discretion for the trial court to use the lodestar method. It does not address whether it is an abuse of discretion *not* to use it.

estate from excessive attorney fees, because guardianships are equitable creations of the trial court.[7] *Lamb*, 173 Wn.2d at 184.

B.    *The Trial Court Made a Just and Reasonable Fee Award*

Quick argues that the award of attorney fees was improper under a lodestar analysis. We hold that the trial court did not abuse its discretion because it made a just and reasonable award of attorney fees as compensation under the statute.

The commissioner ordered that Quick was entitled to represent Decker for 50 hours only. Later, in the commissioner's oral ruling limiting Quick's fees to $30,000, the commissioner clearly decided that Quick's fees were excessive because his hours were so far in excess of what the court had ordered. The commissioner stated, "[Y]ou still are under a court order only to do a certain amount of work without further court authority. So you kind of took your own risk in that regard." CP at 350-51. The commissioner continued, "$100,000 plus is not reasonable in this kind of matter. No matter how hard or difficult Ms. Decker is, no matter how much of a defense she wants, you still have to be mindful of, you know, what kind of context this is." CP at 367. But the commissioner weighed this against the large amount of work Quick had in fact performed for Decker, saying, "I think that given the difficulty and the fact ultimately some additional funds over and above what was initially authorized makes sense, but nowhere near the 110 that you've already, I guess, received." CP at 367. On these bases, the commissioner concluded that a reasonable total fee for Quick was $30,000.

---

[7] Quick also argues that the trial court failed to make a reviewable record of its fee award. But because we hold that a lodestar analysis was not required, neither were corresponding lodestar findings required for our review.

The amount the commissioner awarded was significantly higher than the $12,500.00 total Quick was authorized to bill based on the Agreed Fee Orders ($250.00 per hour for 50 hours), but significantly lower than Quick's actual bill of $135,248.15. In reaching this decision, the commissioner kept to the agreed reasonable rate of $250.00 per hour, and arrived at an award of total fees that took into account Quick's violation of the court orders, but also considered the unexpected difficulty Quick faced in this unusual guardianship case. In doing so, the commissioner appears to have balanced the equitable factors central to the guardianship statute. The trial court balanced Decker's right to contest a guardianship and protect her autonomy by paying an attorney, and the competing need to protect Decker's estate from excessive attorney fees. These considerations are central to the trial court's responsibility to protect the ward's person and estate. *Lamb*, 173 Wn.2d at 184.

We hold that the trial court's award of attorney fees was not an abuse of discretion, because the award reflects a previously agreed hourly rate and a number of hours that weighed the competing equitable concerns, including Quick's actual efforts and the order limiting his hours. This method of calculation and the ultimate award of fees was just and reasonable.

## ATTORNEY FEES ON APPEAL

Both Laufer and Quick seek attorney fees in this appeal. We grant Laufer's request for attorney fees and deny Quick's request.

A.    *Laufer is Entitled to Fees*

Guardian Laufer requests that we grant reasonable attorney fees to Decker's estate under RAP 18.1 and RCW 11.96A.150 reflecting the guardian's expense in this appeal. RAP 18.1 permits us to award reasonable attorney fees to a party entitled to recover such fees under

applicable law. RCW 11.96A.150 permits us to award attorney fees from any party to any party "in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(1). Under this section, we may consider any and all factors we deem to be relevant and appropriate, such as whether the litigation benefits the estate. RCW 11.96A.150(1).

We hold that equity requires that Decker's estate receive reasonable attorney fees reflecting Laufer's expenses in defending this appeal. Laufer defends Decker's interests pursuant to his duties under the guardianship statute. At stake in this appeal is over $100,000 of Decker's assets; as guardian, Laufer defends this appeal to protect those assets on behalf of Decker. The guardianship statute is designed to protect vulnerable people who cannot manage their financial affairs on their own. RCW 11.88.005. Thus, it is equitable to award reasonable attorney fees to Decker's estate, reflecting her legal guardian's expenses for protecting Decker's finances. We consider him a prevailing party, and provide him reasonable attorney fees as an equitable matter for his defense of Decker's estate's assets.

B.    *Quick is Not Entitled to Fees*

Quick argues that respondents Laufer and the Department, not Decker's estate, should bear the costs of this appeal because they frivolously defended the appeal and did not acquiesce to Quick's insistence that his position was supported by settled law. We disagree. For the reasons stated above, Laufer's and the Department's defense of this appeal was not frivolous, and Quick is not entitled to fees.

In conclusion, we affirm the trial court's orders, holding that the trial court had authority to limit Quick's attorney fees and order disgorgement of fees paid to him. We further hold that a lodestar analysis was not required because Quick was retained as an attorney under the

20

No. 45465-3-II

guardianship statute, which by its plain terms requires court oversight of appointed attorneys' fees in an equitable context. RCW 11.92.180, 11.88.045(2). And we hold that the trial court did not abuse its discretion in finding that $30,000 was just and reasonable. We affirm the trial court's award of attorney fees and we further award Decker's estate reasonable attorney fees.

_____
Worswick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Sutton, J.

21